UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IDS PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CHARLES H. FELLOWS,<br><br>　　　　　　　Defendant. | C15-2031 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for partial summary judgment brought by defendant Charles H. Fellows, docket no. 50, and a cross-motion for partial summary judgment brought by plaintiff IDS Property and Casualty Insurance Company ("IDS"), docket no. 60.  Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following Order.

**Background**

In this declaratory judgment action, IDS seeks a ruling that it does not owe coverage, under a homeowners' policy issued to Fellows and his ex-wife, Michaela Osborne, for damage caused sometime prior to August 31, 2015, when Fellows was entitled to take possession of the family residence after dissolution proceedings had concluded.  The damage at issue consists of (i) graffiti and other vandalism to the house; and (ii) theft or other improper disposition of Fellows's personal property, including

ORDER - 1

1  business attire and formal wear.  Fellows has counterclaimed, alleging violations of

2  Washington's Consumer Protection Act ("CPA") and Insurance Fair Conduct Act

3  ("IFCA"), as well as insurance bad faith, constructive fraud, negligence, and breach of

4  contract.  The cross-motions for partial summary judgment focus primarily on the issue

5  of coverage.[1]

6  **Discussion**

7       The Court may grant summary judgment only if no genuine dispute of material

8  fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

9  P. 56(a).  A fact is material if it might affect the outcome of the suit under the governing

10 law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The parties appear to

11 agree that Washington law controls in this case.  Washington courts construe insurance

12 policies as a whole, giving the policy the "fair, reasonable, and sensible construction" that

13 an average person purchasing insurance would.  Vision One, LLC v. Phila. Indem. Ins.

14 Co., 174 Wn.2d 501, 512, 276 P.3d 300 (2012); see also Panorama Vill. Condo. Owners

15 Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 137, 26 P.3d 910 (2001).

16 Inclusionary clauses are liberally construed in favor of coverage, while exclusionary

17 provisions are interpreted strictly against the insurer.  Assurance Co. of Am. v. Wall &

18 Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington

19 law).  If the language of a policy is "clear and unambiguous," the Court must "enforce it

20

21 [1] Fellows has also asked the Court to conclude that IDS has refused to pay his claim without conducting a reasonable investigation, in violation of WAC 284-30-330(4).  IDS requests that Fellows's CPA and IFCA counterclaims be dismissed, but it has not addressed the counterclaims

22 sounding in tort or contract.  Because the issue of coverage cannot be decided as a matter of law, the Court does not reach the merits of the statutory counterclaims.

23

ORDER - 2

1   as written and may not modify it or create ambiguity where none exists." <u>Weyerhaeuser</u>

2   <u>Co. v. Commercial Union Ins. Co.</u>, 142 Wn.2d 654, 666, 15 P.3d 115 (2000).  Neither

3   party contends that any provision of the policy at issue is ambiguous.

4        In its complaint, IDS quoted four policy provisions pursuant to which it asserts

5   the loss at issue would not be covered, namely (i) the "intentional act of an insured"

6   exclusion; (ii) the "30-day vacancy" exclusion; (iii) the "theft committed by an insured"

7   exclusion; and (iv) the "fraudulent or dishonest act" exclusion.  IDS has not yet, however,

8   formally denied coverage.  The first two exclusions relate to the graffiti and vandalism

9   done to the house, while the last two exclusions concern the alleged theft or unauthorized

10  disposal of personal property.  In his motion for partial summary judgment, Fellows

11  contends that none of these exclusions apply.  In its response to Fellows's motion and its

12  cross-motion for partial summary judgment, IDS seeks a ruling that the "intentional act of

13  an insured" exclusion bars coverage as a matter of law, that the other exclusions should

14  survive Fellows's attempt to defeat them because genuine disputes of material fact exist,

15  and that Fellows is not entitled to additional living expenses under the policy.

16      **A.**    **<u>Graffiti and Vandalism</u>**

17       The policy at issue provides that IDS will not pay for "[i]ntentional loss, meaning

18  any loss arising out of any act an insured person commits or conspired to commit with the

19  intent to cause a loss." Ex. 1 to Thenell Decl. (docket no. 61-1 at 18).  This exclusion,

20  however, does not apply if the loss is "otherwise covered" and was "caused by an act of

21  domestic violence by another insured person," provided that the insured person claiming

22  the loss "did not cooperate in or contribute to the creation of the loss" and "cooperates in

23

ORDER - 3

1  any investigation relating to the loss." <u>Id.</u>  This "domestic violence" exception to the

2  "intentional loss" exclusion is consistent with RCW 48.18.550, which defines "domestic

3  abuse" as physical or sexual assault or stalking by one family or household member

4  against another or "intentionally, knowingly, or recklessly causing damage to property so

5  as to intimidate or attempt to control the behavior of another family or household

6  member." RCW 48.18.550(5).

7      Fellows contends that Osborne is solely responsible for the graffiti and vandalism,

8  and that, because Osborne's actions constituted "domestic violence," the "intentional

9  loss" exclusion does not apply.  IDS counters that, even if Osborne acted alone, which it

10  disputes, her conduct was not "domestic abuse" because it was not done to intimidate

11  Fellows or control his behavior.  Neither party, however, has addressed how the issues

12  should be analyzed if Osborne was being truthful when she told Renton police that the

13  three children did the damage.  <u>See</u> Ex. R to Smart Decl. (docket no. 51-2).  Whether the

14  children, who also fall under the definition of "insured," <u>see</u> Ex. 1 to Thenell Decl.

15  (docket no. 61-1 at 13) ("insured" includes "any other person under the age of 21 residing

16  in your household who is in your care"), were of an age and capacity to be able to form

17  the requisite mental state to even trigger the "intentional loss" exclusion or its "domestic

18  violence" exception cannot be determined from the record before the Court.  <u>See</u> RCW

19  9A.04.050.  Thus, as to the applicability of the "intentional act of an insured" exclusion,

20  both cross-motions for partial summary judgment are DENIED.

21      The policy at issue further states that vandalism or malicious mischief is not

22  covered "if the dwelling has been vacant for more than 30 consecutive days immediately

23

ORDER - 4

1  preceding the loss." Ex. 1 to Thenell Decl. (docket no. 61-1 at 18).  Fellows contends

2  that a home cannot be considered "vacant" while its ownership is contested in dissolution

3  proceedings, citing *Johnson v. Inland Empire Farmers' Mut. Fire Ins. Co.*, 155 Wn. 6,

4  283 P. 177 (1929).  *Johnson* does not stand for such proposition.  In *Johnson*, the policy

5  in question insured the assureds' dwelling "while *occupied* by the assured or a reliable

6  tenant." *Id.* at 7 (emphasis added).  The policy also incorporated the insurer's bylaws,

7  which indicated that the "Company will not insure *vacant* buildings and will not be liable

8  for, nor pay, any loss on any building which has been *vacant* for more than thirty days

9  previous to the occurrence of the loss." *Id.* at 8 (emphasis added).  The assureds got

10 divorced, and the husband conveyed his interest in the property to the wife.  *Id.* at 7.  The

11 wife had previously left the dwelling with no intention of returning, and after transferring

12 the residence to the wife, the husband also left with no intention of returning.  *Id.*  A

13 substantial quantity of household goods and personal property belonging to the wife

14 remained in the dwelling, but it was not occupied during the two months before the fire

15 that caused the loss at issue.  *Id.* at 7-8.  The Washington Supreme Court concluded that

16 the residence was not "occupied," as required by the insuring clause, and therefore, no

17 coverage was owed.  *Id.* at 9-13.  It declined to decide whether "unoccupied" and

18 "vacant" are synonymous, reasoning that, even if the bylaws permitted a vacancy not

19 exceeding 30 days, no coverage would have been required because the dwelling had been

20 unoccupied for 60 days.  *Id.* at 13.

21     In *Johnson*, the Washington Supreme Court recognized that whether a residence

22 "is occupied or vacant must depend upon the facts of each particular case." *Id.* at 8-9.  In

23

ORDER - 5

1  connection with this case, Osborne has testified under oath that she moved out of the
2  house at issue during the first week of July 2015.  Osborne Exam. Under Oath at 15-16,
3  Ex. 4 to Thenell Decl. (docket no. 61-4).  Fellows discovered the damage over 30 days
4  later, on August 31, 2015.  During the interim, the residence was apparently unoccupied,
5  but whether it was "vacant" cannot be determined from the record before the Court.  *See*
6  *Jelin v. Home Ins. Co.*, 5 F. Supp. 908 (D.N.J. 1934) (recognizing a distinction between
7  "vacant" and "unoccupied," concluding that vacant means empty of "all matter, whether
8  animate or inanimate," while unoccupied has a "more limited and special meaning," *i.e.*,
9  lacking human beings).  Thus, as to the applicability of the "30-day vacancy" exclusion,
10  both cross-motions for partial summary judgment are DENIED.

11      **B.**    **Personal Property**

12      The policy at issue excludes from coverage any theft "committed by an insured
13  person."  Ex. 1 to Thenell Decl. (docket no. 61-1 at 17).  Unlike the "intentional loss"
14  exclusion, the "theft by insured" provision does not contain an exception for "domestic
15  abuse."  Fellows contends that IDS should not be allowed to rely on the "theft by
16  insured" exclusion because it constitutes a "new basis for denial."  *See* Reply at 9 (docket
17  no. 64).  IDS, however, quoted the "theft by insured" exclusion in its initial pleading, *see*
18  Compl. at 6:17-18 (docket no. 1), and Fellows's motion to strike such coverage defense
19  as untimely raised is DENIED.  Neither party argues that the Court could determine, as a
20  matter of law, whether Osborne committed a "theft" of the personal property at issue, and
21  the Court need not further address the subject.  *See* RCW 9A.56.020 (defining "theft").

22

23

ORDER - 6

In its complaint, IDS also relied on a provision excluding coverage for "[a]ny fraudulent, dishonest, or criminal act by you or anyone acting in concert with you, including your authorized representative, whether acting alone or in collusion with others." <u>See</u> Compl. at 7:7-9; <u>see also</u> Ex. 1 to Thenell Decl. (docket no. 61-1 at 5).  This exclusion is contained within the Identity Protection Coverage endorsement, and is specific to identity fraud, which is not at issue in this case.  IDS did not cite in its initial pleading the general condition declaring the policy void if an insured has, before or after a loss, "intentionally concealed or misrepresented any material fact or circumstances" or "engaged in fraudulent conduct," Ex. 1 to Thenell Decl. (docket no. 61-1 at 23).  As a result, IDS will not be permitted at trial to assert as a coverage defense that Fellows has engaged in any misrepresentation or fraud, but it may argue that Fellows has not provided adequate proof of his loss in connection with the allegedly missing personal property.

C. **<u>Additional Living Expenses</u>**

The policy at issue requires IDS to pay additional living expenses if a covered loss makes the residence uninhabitable.  <u>See</u> Ex. 1 to Thenell Decl. (docket no. 61-1 at 15). For purposes of this matter, "additional living expenses" are defined as the "reasonable increase" in living expenses necessary to maintain the insured's "normal standard of living" while residing elsewhere.  <u>Id.</u>  IDS seeks a ruling that it is not required to provide additional living expenses to Fellows because, prior to being awarded the residence in dissolution proceedings, he was already in rental housing and has not incurred any increased expenses as a result of the graffiti and vandalism at issue.  IDS's analysis is flawed.  After buying out Osborne's equity in the home for $52,413, <u>see</u> Fellows Decl. at

ORDER - 7

¶ 1.15 (docket no. 9), Fellows could have reasonably expected to live in the residence and cease paying rent for a separate dwelling. To the extent that the graffiti and vandalism required Fellows to continue to reside outside the home, his living expenses "increased," within the meaning of the policy. Thus, IDS's motion for partial summary judgment as to the unavailability of additional living expenses is DENIED. Whether Fellows will eventually be entitled to additional living expenses turns in part on whether the loss at issue is covered, which cannot be determined on summary judgment.

**Conclusion**

For the foregoing reasons, plaintiff IDS Property and Casualty Insurance Company's motion for partial summary judgment, docket no. 60, is DENIED, and defendant Charles H. Fellows's motion for partial summary judgment, docket no. 50, is GRANTED in part and DENIED in part. IDS will not be permitted to assert as a coverage defense the "fraudulent or dishonest act" exclusion contained in the Identity Protection Coverage endorsement. The Court hereby DIRECTS plaintiff IDS to make a coverage decision and provide written notice of such decision to Fellows within twenty-one (21) days of the date of this Order.

IT IS SO ORDERED.

DATED this 18th day of November, 2016.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge