UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IDS PROPERTY AND CASUALTY INSURANCE COMPANY, an admitted insurer,<br><br>             Plaintiff,<br><br>      v.<br><br>CHARLES H. FELLOWS,<br><br>             Defendant. | NO.  C15-02031-TSZ<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S DISCOVERY MOTIONS |

I.     INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon several discovery motions filed by plaintiff, IDS Property and Casualty Insurance Company ("IDS"), which were referred to the undersigned by the Honorable Thomas S. Zilly on December 14, 2016. Dkt. 110. Specifically, the Court has carefully reviewed plaintiff's Motion *in Limine* to Prohibit Discovery Regarding the "Reputation" of Daniel E. Thenell, Dkt. 75, Motion to Compel Production, Dkt. 73, Motion to Quash or in the Alternative Motion for Protective Order, Dkt. 78, and Motion to Bifurcate, Dkt. 99, along with defendant Charles H. Fellows' ("Fellows") responses thereto, and all supporting materials. Having considered the parties' written submissions, the parties' arguments at the January 17, 2017 hearing, the governing law, and the balance of the record,

ORDER - 1

the Court GRANTS IN PART and DENIES IN PART plaintiff's motions, as set forth below. Dkts. 73, 75, 78, 99.[1]

## II.   DISCUSSION

### A.   IDS' Motion *in Limine* to Prohibit Further Discovery Regarding the Reputation, Habits, and Violations of Washington Law of Daniel E. Thenell

IDS moved the Court for an Order prohibiting Fellows from deposing and/or requesting any further discovery regarding the alleged reputation, habits, and violations of Washington law by its counsel Daniel Thenell, and also prohibiting Fellows from deposing Mr. Thenell. Dkt. 75 at 2.[2] During the January 17, 2017 hearing, however, IDS and Fellows advised the Court that both sides have completed discovery in this case. The parties also agreed that in light of the expiration of the discovery deadline on December 2, 2016, IDS' request that the Court enter an order limiting the scope of further discovery in this matter is now moot.

IDS then argued, for the first time, that although its motion was framed as a request to prohibit further discovery regarding Mr. Thenell's reputation, habits, and alleged violations of Washington law, the "essence" of that motion was to prevent such evidence from being presented during the trial of this matter. Dkt. 75. Thus, IDS asked the Court to construe its discovery motion, which should have been characterized as a request for a protective order, as a motion *in limine* to preclude the admission of such reputation evidence at trial.

Fellows responded that IDS' motion, as written, was limited to the issue of what further discovery should be allowed in this case – an issue which is now moot. Fellows argued,

---

[1] Defendant recently filed a Motion to Strike Untimely Expert Disclosure. Dkt. 106. However, that motion is not yet ripe and will be addressed by separate order by Judge Zilly.

[2] Specifically, IDS argues that Mr. Thenell did not perform any quasi-fiduciary duties for IDS, but only performed legal services at the direction of IDS' claims department, and therefore Mr. Thenell's reputation and habits are not relevant to Fellows' bad faith claims in this case. *Id.* at 8-9.

ORDER - 2

however, that if the Court were to reach the question of whether evidence relating to Mr. Thenell's reputation and habits should be admissible at trial, the Court should find that Fellows has a right to offer such reputation evidence in order to establish a pattern, practice, or other acts by Mr. Thenell, who was acting as an agent for IDS while he investigated Fellows' claim.

Based upon the parties' representation that no further discovery will be conducted in this matter, as the discovery deadline has now passed, the Court DENIES IDS' Motion *in Limine* to Prohibit Discovery Regarding "Reputation" of Daniel E. Thenell, Dkt. 75, as MOOT. The Court further declines IDS' invitation to rule on the admissibility of evidence regarding Mr. Thenell's reputation, habits, or alleged violations of Washington law at trial, as this was not the issue presented by IDS' October 2016 discovery motion.[3] Moreover, as explained below, the Court finds that the question of whether evidence of Mr. Thenell's reputation or habits, *i.e.* evidence of a pattern, practice, or other acts, is properly admissible at trial under the Rules of Evidence, is best resolved by Judge Zilly at time of trial.

As a threshold matter, the Court notes that to date, Judge Zilly has not made any ruling regarding the admissibility of reputation evidence related to Mr. Thenell, but has only ruled on what discovery requests can be properly directed to IDS' Rule 30(b)(6) representatives. Specifically, Judge Zilly limited the scope of Fellows' discovery requests to IDS' representatives by issuing a protective order on May 2, 2016 "prohibiting any representatives and the disclosure of any documents responsive to defendant's Rule 30(b)(6) notice requests

---

[3] As discussed in more detail below, it was apparent at the January 17, 2017 hearing that a substantial amount of time and effort expended by the parties, as well as the Court, on IDS' discovery motions could have been avoided if IDS' counsel had made a meaningful effort to meet and confer with Fellows' counsel as required by the local rules of this district. However, IDS routinely ignored this district's meet and confer procedures, relying instead on last minute emails to Fellows' counsel without giving them a reasonable period of time in which to respond.

ORDER - 3

21-24." Dkt. 35 at 1.[4]  By contrast, Judge Zilly explicitly denied plaintiff's request to prohibit further discovery regarding "[a]ll instructions, documents and actions taken by Dan Thenell relating to the investigation into the claims made by Charles Fellows," which he ruled "may be covered in the 30(b)(6) deposition." *Id.*

Moreover, on May 13, 2016, Judge Zilly acknowledged that under Washington law, in the context of first-party insurance claims of bad faith, a presumption exists that the insurer has no attorney-client privilege vis-à-vis the insured concerning claims-handling materials. Dkt. 45 at 1 (citing *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 698-99, 700, 295 P.3d 239 (2013)).  However, that presumption may be rebutted by the insurer's showing that its attorney was not engaged in the "quasi-fiduciary tasks of investigating and evaluating the claim," but was instead "providing the insurer with counsel as to its own potential liability." *Id*. (citing *Cedell*, 176 Wn.d2d at 699).  Pursuant to *Cedell*, Judge Zilly conducted an *in camera* review of several documents from the claims file to determine whether IDS had overcome the presumption against attorney-client privilege or the work product doctrine. *Id*. at 2-3. Following his *in camera* review, Judge Zilly issued a June 10, 2016 Minute Order finding that "the Court is satisfied that, with one exception, plaintiff IDS has appropriately invoked its attorney-client and/or work-product privilege" as to the specific documents he had reviewed *in camera*.  Dkt. 46 at 1.

Thus, although Judge Zilly found that IDS had properly invoked the attorney-client and/or work-product privilege as to the specific claim documents he reviewed *in camera*,

---

[4] Specifically, the four prohibited topics for IDS' representatives were "[a]ll investigations, materials, or documents concerning the reputation of Dan Thenell" (21) for fairness towards insureds in insurance investigations, (22) for the creation of coverage disputes where no legitimate coverage question exists, (23) for filing false frivolous lawsuits, and (24) for the erection of artificial roadblocks to delay or defeat legitimate claims of insureds. Dkt. 30 at 2.

ORDER - 4

Judge Zilly did not make any finding regarding whether Mr. Thenell had otherwise engaged in "the quasi-fiduciary tasks of investigating and evaluating the claim" during other aspects of Mr. Thenell's work for IDS. IDS' contention that Judge Zilly has already held that Mr. Thenell was not engaged in quasi-fiduciary tasks throughout his investigation of Fellows' claim on behalf of IDS misconstrues the scope of Judge Zilly's orders.

The undersigned is not in a position, based upon the limited record before it, to rule on this issue. However, the Court does note that Mr. Thenell's own concessions at the hearing established that his work for IDS was not limited to counseling IDS as to its potential liability under the insurance policy. Mr. Thenell was responsible for handling all direct communications with the insured on behalf of IDS.[5] Mr. Thenell was also actively involved in investigating plaintiff's claim on behalf of IDS, including personally conducting the Examinations Under Oath ("EUOs") of the named insureds, Mr. Fellows and Ms. Osborne.[6] Several federal courts have recognized that when Mr. Thenell conducts EUOs on behalf of an insurance company, he is performing investigative work and therefore has quasi-fiduciary obligations to the insured like any other insurance adjuster or SIU investigator. *See Linder v. Great N. Ins. Co.*, No. C15-5002-RBL, 2016 WL 740261, at *2 (W.D. Wash. February 25, 2016) (holding that in contrast to legal counsel from several other law firms, whose involvement in the case was limited to "analyzing the insurer's legal rights, a non-fiduciary task" or other work produced only "in anticipation of litigation," much of the work performed by Mr. Thenell and his law group amounted to "quasi-fiduciary tasks" because "Thenell

---

[5] For example, Mr. Thenell sent Fellows' counsel the December 6, 2016 letter denying coverage under the policy, after Judge Zilly directed IDS to make a coverage decision. Dkt. 102-1.

[6] The parties also advised the Court that early in the case, they discussed whether Mr. Thenell may need to withdraw as legal counsel for IDS, in light of his active role in investigating Fellows' claim. To date, Mr. Thenell has elected not to do so, and Fellows has not sought disqualification.

ORDER - 5

investigated, evaluated, and assisted with the processing of Linder's claim."); *Mogadam v. Liberty Mut. Fire Ins. Co.*, No. 214CV00224EJLCWD, 2015 WL 6510352, at *1-2 (D. Idaho October 28, 2015) ("It is undisputed the Thenell Law Group engaged in a quasi-fiduciary role by evaluating and investigating Mogadam's claim and by providing legal analysis to Liberty Mutual," and therefore documents generated as part of the investigation of the claim, including a status report from Thenell Law Group regarding the EUO of the insured, must be un-redacted and produced).

Thus, whether Mr. Thenell owed Mr. Fellows a quasi-fiduciary duty because he was actively investigating Fellows' claim as an agent of IDS and whether Mr. Thenell's conduct during the investigation breached that duty, are questions to be resolved at time of trial. Judge Zilly will therefore be in the best position to determine whether Fellows can introduce evidence of Mr. Thenell's reputation under Fed. R. Evid. 405(a) and 406 to establish a pattern or practice of behavior by Mr. Thenell which can in turn, be imputed to IDS, because Mr. Thenell was acting as IDS' agent.[7] It would clearly be at odds with Washington law if Mr. Thenell, while acting as an agent of an insurance company, could violate the rights of the insureds during a claim investigation, but remain immune from reproach regarding unlawful patterns or practices (unlike a non-lawyer SIU investigator or insurance adjuster who conducts claim investigations on behalf of an insurer) simply because he subsequently represents the insurer as legal counsel.

On the other hand, Fellows indicated that to establish the reputation, pattern and practice of Mr. Thenell, he was prepared to call at least five witnesses. This, of course, would open the door to IDS calling witnesses to defend the character of Mr. Thenell, risking the

---

[7] Fellows argues that when IDS hired Mr. Thenell it knew, or should have known, that he had a longstanding reputation for bias against the interests of insured claimants and against coverage, and that Fellows' claim was largely being "handled" for IDS by Mr. Thenell.

possibility of a potentially collateral issue taking predominance over what happened in this case.  Because neither the quality of proffered evidence, nor whether the quantum of evidence arises to the level of habit, is before the undersigned, the Court recommends that Judge Zilly resolve the question of the admissibility of "reputation" evidence at time of trial or a motion *in limine* hearing prior to trial directed to these trial issues rather than discovery issues.

B. <u>IDS' Motion to Compel Production</u>

During the hearing, the parties agreed that the only remaining discovery disputes in this case that required resolution by the Court were IDS' Requests for Production 48 and 49, which are both requests for emails. For the first time, IDS also clarified that with respect to IDS RFP 49, IDS was only seeking all emails sent or received by any member of Keller Rohrback that refer to Dan Thenell's "reputation."

*IDS RFP Nos. 48 and 49 to Fellows*

<u>IDS RFP No. 48</u>: All Emails between Keller Rorback (sic) and Lether Law Firm regarding Charles Fellows, this lawsuit, Fellows claim, Ms. Osborne.

<u>IDS RFP No. 49</u>: All Emails sent or received that mention Dan Thenell or Thenell Law Group from any member of Keller Rohrback.

On June 6, 2016, Fellows responded to IDS' RFP No. 48 by providing 959 pages of bates-stamped but fully redacted emails (LETHEREMAILS_00001 to LETHEREMAILS_000959), which Fellows represents are mostly comprised of exhibits that Mr. Lether's office had forwarded to Keller Rohrback when the case was initially being transferred.  Fellows indicated that the emails were all redacted because they were "subject to the attorney-client privilege and the work-product doctrine."  Dkt. 74 (Hill Decl.), Ex. 7 at 2. Fellows did not provide an email-by-email privilege log for the emails, which is the common practice (and expectation) in this district.  During the hearing, Fellows' counsel argued that if IDS needed an email-by-email privilege log, IDS should have requested one several months

ORDER - 7

ago instead of delaying this request until so close to the trial date. However, Fellows' counsel also offered to provide a privilege log identifying the dates of the emails exchanged between Mr. Lether's office and Keller Rohrback, to satisfy IDS that the emails did not include more recent (unprivileged) discussions regarding Mr. Thenell's reputation.

The Court GRANTS IN PART and DENIES IN PART IDS' RFP 48. First, the Court finds that, consistent with the well established law of the Ninth Circuit, an email-by-email privilege log should have been provided to IDS by Fellows in June 2016 to confirm that these were privileged communications between Fellows' former and current legal counsel. However, this failing by Fellows is tempered by IDS' corresponding failure to request the privilege log for almost seven months, or meaningfully meet and confer with Fellows regarding this issue. Accordingly, Fellows' counsel shall provide IDS with a limited privilege log identifying emails exchanged between Lether's office and Keller Rohrback which also were sent or exchanged with third parties (other than Mr. Fellows) where the privilege may have been waived.

With respect to IDS RFP No. 49 (as amended at the hearing), which seeks all emails of Keller Rohrback employees related to the "reputation" of Mr. Thenell, Fellows has objected on the grounds that the request (which relates to all Keller Rohrback custodians for an unlimited period of time) was overbroad, seeks information subject to attorney-client privilege and the work product doctrine, and seeks confidential information concerning clients other than Mr. Fellows. Dkt. 74, Ex. 7 at 3. During the hearing, Fellows further explained that Keller Rohrback had already searched the emails of several Keller Rohrback attorneys, paralegals, and legal assistants exchanged with the witnesses who may be called to testify regarding Mr. Thenell's reputation, and in December 2016 Fellows produced approximately 6,000 emails to

ORDER - 8

1  IDS. Especially in light of the large volume of responsive material recently produced, Fellows
2  argues that IDS' request would be unduly burdensome for Keller Rohrback.

3  The Court DENIES IDS' request for further production of Keller Rohrback emails.
4  Fed. R. Civ. P. 26 provides that "[p]arties may obtain discovery regarding any nonprivileged
5  matter that is relevant to any party's claim or defense and proportional to the needs of the
6  case." Fed. R. Civ. P. 26(b)(1). Of the enumerated considerations that bear on proportionality,
7  "the importance of the discovery in resolving the issues" and "whether the burden or expense
8  of the proposed discovery outweighs its likely benefit" particularly favor Fellows in this case.
9  Given the voluminous evidence already produced to IDS regarding Keller Rohrback's
10 counsel's views on Mr. Thenell's reputation, the requested emails would include information
11 that is negligibly relevant, potentially privileged, and unduly burdensome. Accordingly, the
12 information sought is disproportional to the needs of the case, and IDS RFP No. 49 (as
13 amended) is DENIED.

14       C.   IDS' Motion to Quash or Motion for Protective Order

15  IDS also moved the Court to quash any further depositions of IDS' representatives
16 conducted by opposing counsel Mr. Smart, or in the alternative, to enter a protective order
17 regarding any future depositions. Dkt. 78. In addition, IDS asked the Court to award sanctions
18 against opposing counsel in the amount of $50,000 pursuant to Fed. R. Civ. P. 30(d)(2) and
19 37(b)(2) for inquiring beyond the scope of the Fed. R. Civ. P. 30(b)(6) designations during the
20 four 30(b)(6) depositions conducted on April 19, 2016 and October 19, 2016, and for "abusive,
21 argumentative, and otherwise inappropriate conduct during [the] depositions." Dkt. 78 at 2,
22 16.[8]

---

[8] Specifically, IDS alleges that Mr. Smart should be ordered to refrain from (1) raising his voice at witnesses, (2) abusing witnesses, (3) repeatedly asking the same question which

ORDER - 9

Although the Court was prepared to order that all future depositions in this case be conducted in chambers, to ensure appropriate conduct by counsel for both sides in the future, the expiration of the discovery period renders IDS' motion, Dkt. 78, MOOT. As discussed on the record, the Court also denies IDS' request for financial terms. District courts have broad discretion in imposing discovery sanctions. *Ritchie v. U.S.*, 451 F.3d 1019, 1026 (9th Cir. 2006) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). Having carefully reviewed the video excerpts submitted by IDS, as well as the parties' submissions, the Court does not find that sanctions against Fellows' counsel are called for in this case. Although the Court was greatly troubled by several questions asked by Fellow's counsel during Rule 30(b)(6) depositions that violated Judge Zilly's protective order, the Court is equally troubled by the conduct of IDS' counsel, who made repetitive, boilerplate objections throughout the depositions and has failed to meaningfully meet and confer with respect to these discovery motions. Accordingly, IDS' motion for sanctions is DENIED.

D.   <u>IDS' Motion to Bifurcate the Trial</u>

Finally, IDS moves the Court to bifurcate, or "phase," the trial of this matter. Dkt. 99. Specifically, IDS asks the Court to first try the coverage issues presented by IDS' complaint for declaratory relief, Dkt. 1, and then try Fellows' counterclaims, Dkt. 10, so as to promote judicial economy and avoid undue prejudice. IDS contends that whether it had any contractual obligation to provide coverage or make payments to Mr. Fellows should be resolved first, in a separate trial, because it is a possibly dispositive issue that may preclude the "non-contractual" claims from proceeding.

---

has already been answered, (4) asking questions of Fed. R. Civ. P. 30(b)(6) witnesses which are outside the scope of their designations, (5) being argumentative with witnesses, and (6) making baseless accusations. Dkt. 78 at 2-3.

ORDER - 10

Fellows responds that bifurcating this case into multiple trials would not serve judicial economy, but would result in two trials and the unnecessary duplication of evidence. Dkt. 101 at 1. In particular, Fellows asserts that a determination of coverage is not dispositive of Fellows' extracontractual claims, and therefore bifurcation would necessarily result in two trials instead of one. *Id.* Finally, Fellows asserts that any possible prejudice to IDS can be mitigated by the use of jury instructions. *Id.*

Fed. R. Civ. P. 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision to bifurcate is committed to the sound discretion of the trial court. *Hangarter v. Provident Life and Acc. Ins. Co.,* 373 F.3d 998, 1021 (9th Cir. 2004). The Ninth Circuit has stated that a district court's decision declining to bifurcate comports with normal trial procedure. *Id.*

The moving party must prove that bifurcation would promote judicial economy or that it would avoid inconvenience or prejudice to the parties. *Karpenski v. American General Life Companies, LLC*, 916 F. Supp. 2d 1188, 1190 (W.D. Wash. 2012). Where an overlap of factual issues exists between the claims, courts are reluctant to bifurcate the proceedings. *Dees v. AllState Ins. Co*, Case. No. C12-0483-JLR, 2012 WL 3877708 (citing *McLaughlin v. State Farm Mut. Auto. Ins. Co.,* 30 F.3d 861, 871 (7th Cir. 1994)). If a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties. *Id.* (citing *Allstate Ins. Co. v. Breeden,* 410 F. App'x 6, 9 (9th Cir. 2010)). If, however, the preliminary and separate trial of an issue will involve extensive proof and substantially the same facts or witnesses as the other issues in the cases, or if any saving in time and expense is

ORDER - 11

wholly speculative, the motion should be denied. *Id.* Numerous federal courts have recognized the substantial overlap between the issues of coverage and bad faith, such that bifurcation of the issues is often appropriate. *Id.* (collecting cases).

The Court has considered IDS' motion to bifurcate, but does not find that bifurcation of this trial would promote judicial economy because there is significant factual overlap between the contractual and non-contractual claims. To date, it does not appear that IDS has attempted to segregate discovery related to coverage from discovery related to the extracontractual claims, as the two are inextricably intertwined. For example, IDS' initial disclosures did not distinguish among witnesses who will testify regarding coverage as opposed to those who would testify regarding claims handling. Most importantly, it appears that IDS relies on the same facts and claims investigation to defend its coverage position that Fellows intends to rely on to support his extracontractual claims that IDS' claims handling ran afoul of Washington law. For example, although IDS has recently denied coverage to Mr. Fellows based in part upon a finding that Ms. Osborne's conduct at the house did not constitute "domestic violence" within the meaning of the applicable statute, Fellows' extracontractual claims are based in part on what steps IDS took to investigate the domestic violence exception in this case. *See* Dkt. 101 at 4-5.

Moreover, a policyholder may bring claims against his or her insurer regardless of whether the insurance ultimately prevails on its coverage decision. *See Coventry Associates v. American States Ins. Co.*, 136 Wn.2d 269, 279, 961 P.2d 933 (1998). Even if IDS were to obtain equitable relief and prevail on the issue of coverage during the first phase of a bifurcated trial, this would not necessarily dispose of the lawsuit because Fellows may still pursue his bad faith claim, for example, against IDS. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500,

ORDER - 12

510-11 (1959) (holding that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims.").

Accordingly, in keeping with the normal trial procedures of the Ninth Circuit, the Court DENIES IDS' motion to bifurcate this trial into two phases, Dkt. 99, which would likely lead to duplicated efforts and increased costs. Proper jury instructions, as well as a proper verdict form, can help alleviate any potential for prejudice to IDS or jury confusion.

DATED this 18th day of January, 2017.

JAMES P. DONOHUE
Chief United States Magistrate Judge