UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IDS PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Plaintiff,

v.

CHARLES H. FELLOWS,

        Defendant.

C15-2031 TSZ

ORDER

THIS MATTER comes before the Court following entry of a verdict reached by the jury, docket no. 201. In light of the jury's factual findings and damage awards, the Court enters the following order.

**Background**

In this declaratory judgment action, plaintiff IDS Property and Casualty Insurance Company ("IDS") seeks a ruling that, under a homeowners' policy issued to defendant Charles H. Fellows and his ex-wife, Michaela Osborne, which was in effect from May 10, 2015, through May 10, 2016, it does not owe coverage for the following losses: (i) damage to the residence located at 10021 SE 192nd Place in Renton, Washington, which was caused sometime prior to August 31, 2015, when Fellows was entitled to take possession of the dwelling after dissolution proceedings had concluded, (ii) additional living expenses ("ALE") necessarily incurred to reside elsewhere while the dwelling was

ORDER - 1

1  uninhabitable; and (iii) removal from the home of Fellows's personal property, including
2  business attire and formal wear.  Fellows brought six counterclaims, two of which (for
3  constructive fraud and negligence) were dismissed with prejudice on IDS's oral motion
4  pursuant to Federal Rule of Civil Procedure 50(a).  <u>See</u> Minute Order (docket no. 198).
5  The jury reached a verdict in favor of Fellows on the remaining four counterclaims for
6  (i) breach of contract, (ii) violation of the Insurance Fair Conduct Act ("IFCA"),
7  (iii) violation of Washington's Consumer Protection Act ("CPA"), and (iv) insurance bad
8  faith.  The Court now declares "the rights and other legal relations" of the parties
9  pursuant to 28 U.S.C. § 2201, and addresses the issue of increased or treble damages
10 under the CPA and the IFCA.
11 **Discussion**
12 **A.**    **Coverage**
13     Under Washington law, a coverage determination is a two-step process.  <u>Diamaco,</u>
14 <u>Inc. v. Aetna Cas. & Sur. Co.</u>, 97 Wn. App. 335, 337, 983 P.2d 707 (1999).  First, the
15 insured must show that the loss falls within the scope of the policy's insured perils or
16 losses.  <u>See id.</u>  The burden then switches to the insurer to prove that the loss "is excluded
17 by specific policy language."  <u>See</u> <u>McDonald v. State Farm Fire & Cas. Co.</u>, 119 Wn.2d
18 724, 731, 837 P.2d 1000 (1992); <u>Diamaco</u>, 97 Wn. App. at 337.
19     The policy at issue is a "named-peril" policy as to personal property and an
20 "all-risk" policy as to the residence.  <u>See</u> Ex. 1 to Compl. (docket no. 1-1 at 16); <u>see also</u>
21 <u>Fisher Commc'ns, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, 2012 WL 12883115 at *2
22 (W.D. Wash. Sep. 4, 2012) (discussing the distinction between "named-peril" and "all-
23

ORDER - 2

risk" policies).  The Court has previously concluded that Fellows did not carry his initial burden of proving that the loss of his personal property, including business attire and formal wear, was within the scope of a named peril.  <u>See</u> Minute Order at ¶ 1(c) (docket no. 198).  As to the loss of personal property, the Court will enter declaratory judgment in favor of IDS and against Fellows, indicating that coverage is not owed under the policy at issue for the items identified in Trial Exhibit 17.

With respect to the damage to the home and the related ALE, the parties do not dispute that such loss is within the scope of the risks insured by the policy.  Indeed, the policy covers "direct physical loss to property insured under the Dwelling and Other Structures Coverages except for losses excluded elsewhere," and in the event that a covered loss makes the residence uninhabitable, "the reasonable increase in your living expenses necessary to maintain your normal standard of living while you live elsewhere."  Ex. 1 to Compl. (docket no. 1-1 at 15 & 16).  IDS seeks to avoid coverage by relying on the following exclusion:

> Intentional loss, meaning any loss arising out of any act an insured person commits or conspired to commit with the intent to cause a loss. . . .
>
> [T]his exclusion will not apply to deny an insured person's claim for an otherwise covered property loss under this policy if such a loss is caused by an act of domestic violence by another insured person under this policy and the insured person claiming the property loss:
>
> a)  did not cooperate in or contribute to the creation of the loss; and
> b)  cooperates in any investigation relating to the loss.

Policy Exclusions at ¶ 9 (docket no. 1-1 at 18).  The above-quoted "domestic violence" exception to the "intentional loss" exclusion is required by Washington law.  <u>See</u> RCW 48.18.550(3).

ORDER - 3

The jury heard evidence over the course of six trial days and unanimously found as follows: (i) Osborne and her children caused the damage at issue to the dwelling, (ii) Osborne did so with the "intent to cause a loss," but her children did not have such requisite intent,[1] and (iii) the damage by Osborne was caused by an act or acts of domestic violence. *See* Verdict at Questions Nos. 1-5 (docket no. 201). As a result of the jury's factual findings, which were supported by substantial evidence, the Court concludes, as a matter of law, that the damage caused by Osborne is covered under the homeowners' policy because it falls within the "domestic violence" exception to the "intentional loss" exclusion. The Court further concludes, as a matter of law, that the damage caused by Osborne's children is covered because the "intentional loss" exclusion does not apply. The Court will enter declaratory judgment in favor of Fellows and against IDS indicating that coverage is owed for the damage to the residence caused by Michaela Osborne and/or her children and for Fellows's related ALE.[2]

---

[1] Before instructing the jury, the Court removed the following sentence from Instruction No. 11, which had appeared in previous drafts circulated to counsel:

> You must presume that Osborne's children were incapable of formulating an "intent to cause a loss," unless you find that IDS has proved by a preponderance of the evidence that the children had sufficient capacity to understand their actions and to know that such actions were wrong.

The Court had cited as sources RCW 9A.04.050, *Pub. Emps. Mut. Ins. Co. ("PEMCO") v. Fitzgerald*, 65 Wn. App. 307, 828 P.2d 63 (1992), and *Garratt v. Dailey*, 46 Wn.2d 197, 279 P.2d 1091 (1955). IDS took formal exception to this language, and the Court struck it from the version of Instruction No. 11 provided to the jury. Fellows objected to such omission. Given the jury's verdict, Fellows's objection is now moot.

[2] Instruction No. 11 indicates IDS bears the burden of proving that the damage to the residence was not caused by an act of domestic violence, or in other words, that the purpose of the damage was not to intimidate or attempt to control Fellows's behavior. Instr. 11 (docket no. 196 at 14-15). IDS objected on the ground that the burden should be on Fellows to prove the damage was caused by an act of domestic

ORDER - 4

B.  **Treble Damages**

Increased or treble damages are available under both the CPA and the IFCA.  *See* RCW 19.86.090 ("the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained," provided that such increased damage award may not exceed $25,000);  RCW 48.30.015(2) (the court may "increase the total award of damages to an amount not to exceed three times the actual damages").  The parties agree that whether to award increased or treble damages under the CPA is a question for the Court.  The parties dispute whether the same is true under the IFCA.

---

violence.  The Court is satisfied that, because the "domestic violence" exception is contained within the "intentional loss" exclusion, as opposed to a separate provision of the policy, and because IDS could not, consistent with Washington law, exclude loss caused by domestic abuse or violence to an innocent co-insured's otherwise covered property, Instruction No. 11 appropriately placed the burden on IDS to disprove domestic violence.  *See*, *e.g.*, *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington law pursuant to which exclusionary provisions are interpreted strictly against the insurer).  The cases cited by IDS to support its argument to the contrary are distinguishable.  Unlike the matter before the Court, in *Mid-Continent Cas. Co. v. Titan Constr. Corp.*, 2009 WL 1587215 (W.D. Wash. June 5, 2009), the insurance coverage issue involved an exception to an exception to an exclusion, on which the insurer was held to have the burden of proof; the discussion regarding the split of authority among jurisdictions other than Washington as to which party bears the burden of proof on an exception to an exclusion was merely dicta.  In *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814 (W.D. Wash. 2014), the question was whether the insurer was required by the Washington Administrative Code to cite, in its coverage denial letter, a "dominant cause" clause, which was a separately-stated exception to all of the exclusions in the policy; the *MKB* Court ruled that the insurer did not have to notify the insured about the "dominant cause" clause in its coverage denial letter, and denied the insured's summary judgment motion to bar or estop the insurer from relying on the "dominant cause" provision of the policy.  *MKB* is both substantively and procedurally different from the pending matter.  Finally, *Gen'l Constr. Co. v. Zurich Am. Ins. Co.*, 2004 WL 1707845 (W.D. Wash. May 21, 2004), which concerned an "ensuing loss" clause, as opposed to an exception contained within a specific exclusion in a policy, and which cited Minnesota law for the proposition that the insured bears the burden of proving a covered ensuing loss, has been called into doubt by the Washington Supreme Court's later decision in *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 276 P.3d 300 (2012).  The *Vision One* Court made clear that, in a case involving an "ensuing loss" or "resulting loss" clause, the dispositive issue is whether a loss ensuing from an excluded event is covered or excluded; if the ensuing loss is also an excluded peril or an excluded loss, it is not covered.  *Id.* at 516.  Thus, contrary to the ruling in *Gen'l Constr.*, *Vision One* supports the conclusion that the insurer, not the insured, bears the burden of proof in the "ensuing loss" context to show that the ensuing loss is itself excluded by the policy language.

ORDER - 5

The Court was persuaded by the reasoning in other decisions from this district that Fellows was entitled, under the Seventh Amendment, to a jury determination on his request for increased damages under the IFCA.  See *MKB Constructors v. Am. Zurich Ins. Co.*, 2015 WL 1188533 at \*29-\*31 (W.D. Wash. Mar. 16, 2015); *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.*, 2012 WL 5992286 at \*3-\*6 (W.D. Wash. Nov. 30, 2012); *Nw. Mut. Life Ins. Co. v. Koch*, 771 F. Supp. 2d 1253 (W.D. Wash. 2009).  Section 2 of Instruction No. 18 advised the jury that it could, but was not required to, award increased damages in connection with Fellows's second counterclaim for violation of the IFCA and that, in deciding whether to award increased damages, it must consider whether Fellows had proven that an increased award was necessary to punish IDS for its conduct or to deter IDS from engaging in similar conduct in the future.  Instr. 18 (docket no. 196 at 29).  Although IDS objected to the giving of an instruction on increased damages, it did not challenge the form of Instruction No. 18 or indicate that the instruction misstated the law in any way.

The jury awarded increased damages on the IFCA counterclaim in the amount of $494,394.72, which represents three times the total amount of actual damages.  Verdict at Questions No. 9 & 11 (docket no. 201).  The Court concurs with the jury's decision, and would award the same amount of increased damages on the IFCA counterclaim if the jury's verdict was treated as merely advisory.  See Fed. R. Civ. P. 39(c)(1).  IDS was on notice upon the entry of the Order dated November 18, 2016, docket no. 98, denying its motion for partial summary judgment, that the "intentional loss" exclusion would likely not apply with respect to the damage caused by Osborne's children.  Nevertheless, IDS

ORDER - 6

unreasonably, and in an untimely manner, denied coverage on December 6, 2016, *see* Ex. 24 to Thenell Decl. (docket no. 117-5), over fifteen months after Fellows made a claim for insurance benefits, and almost a year after IDS initiated this declaratory judgment action.  IDS did not issue its coverage determination until after it was ordered to do so by the Court, and its conduct toward its insured in this matter has not complied with either the letter or the spirit of the provisions of the Washington Administrative Code identified in RCW 48.30.015(5), violation of which constitute a basis for increased or treble damages.  *See* RCW 48.30.015(2).  For these reasons, the Court believes that damages should also be increased on Fellows's CPA counterclaim, albeit not up to the maximum authorized by the statute, and the Court awards Fellows another $10,000.

**Conclusion**

The Clerk is DIRECTED to enter judgment consistent with the jury's verdict and this Order, to send a copy of this Order to all counsel of record, and to close this case.

DATED this 6th day of April, 2017.

Thomas S. Zilly
United States District Judge