UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IDS PROPERTY AND CASUALTY
INSURANCE COMPANY,

                    Plaintiff,

          v.

CHARLES H. FELLOWS,

                    Defendant.

C15-2031 TSZ

ORDER

THIS MATTER comes before the Court on a motion for judgment as a matter of

law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, a new trial

pursuant to Federal Rule of Civil Procedure 59 or remittitur, docket no. 214, and a motion

to stay execution on the judgment pending resolution of post-judgment motions, docket

no. 231, brought by plaintiff IDS Property and Casualty Insurance Company ("IDS").

Having reviewed all papers filed in support of, and in opposition to, each motion, the

Court enters the following order.

**Background**

Defendant Charles H. Fellows was previously married to Michaela Osborne. *See*

Pretrial Order at 3 (docket no. 153). During the course of dissolution proceedings,

ORDER - 1

1   Osborne obtained a no-contact or protection order and, as a result, Fellows was required

2   to move out of their residence located at 10021 SE 192nd Place in Renton, Washington.

3   *See id.*  In April 2015, for purposes of the dissolution proceedings, the house was

4   appraised and assessed to be in good condition.  *Id.*  At the conclusion of the dissolution

5   proceedings, Fellows was awarded the home, and Osborne was directed to vacate the

6   residence by the end of August 2015.  *See id.*  Upon his return to the residence on

7   August 31, 2015, Fellows discovered a substantial amount of damage, including graffiti,

8   holes in the walls, and other vandalism.  *Id.* at 4.  Fellows immediately reported the

9   damage to the Renton Police Department, which performed an investigation.  *Id.*  On the

10  following day, September 1, 2015, Fellows made a claim against a homeowners' policy

11  issued by IDS.

12      IDS initiated this declaratory judgment action to obtain a ruling that, under the

13  homeowners' policy, which was in effect from May 10, 2015, through May 10, 2016, it

14  did not owe coverage for the following losses:  (i) damage to the residence, (ii) additional

15  living expenses ("ALE") necessarily incurred by Fellows to reside elsewhere while the

16  dwelling was uninhabitable, and (iii) theft or other improper disposition of Fellows's

17  personal property, including business attire and formal wear.  IDS asserted that the losses

18  were excluded under the policy because they resulted from intentional acts of an insured,

19  namely Osborne and/or her children, and that the vandalism to the dwelling was not the

20  product of domestic violence.  Fellows brought six counterclaims, two of which (for

21  constructive fraud and negligence) were dismissed with prejudice on IDS's oral motion

22  pursuant to Federal Rule of Civil Procedure 50(a).  *See* Minute Order at ¶¶ 1(a) & (b)

23

ORDER - 2

(docket no. 198). With respect to the remaining four counterclaims, to the extent they were premised on the lost business attire and formal wear, they were dismissed in part. *See* *id.* at ¶ 1(c).

As to the damage to the residence and the ALE, the jury reached a verdict in favor of Fellows on his counterclaims for (i) breach of contract, (ii) violation of the Insurance Fair Conduct Act ("IFCA"), (iii) violation of Washington's Consumer Protection Act ("CPA"), and (iv) insurance bad faith. *See* Verdict (docket no. 201). Judgment was entered on April 7, 2017, in favor of Fellows and against IDS in the following amounts: (i) $164,798.24 in contract damages; (ii) $494,394.72 in increased damages under IFCA; (iii) $102,600 in actual damages on the CPA and insurance bad faith counterclaims; (iv) $10,000 in increased damages under the CPA; and (v) $145,000 in noneconomic damages on the bad faith counterclaim, for a total of $916,792.96, together with costs and post-judgment interest. Judgment (docket no. 205). Within 28 days after entry of the judgment, IDS filed its motion for judgment under Rule 50(b), new trial under Rule 59, or remittitur, but it did not file its motion to stay execution on the judgment until over three weeks after Fellows commenced garnishment proceedings, naming as garnishee defendants, in three separate actions, Costco Insurance Agency, Inc., Ameriprise Financial Services, Inc., and Ameriprise Auto & Home Insurance Agency, Inc. *See* Applications for Writ of Garnishment (docket no. 1 in Case Nos. 17-mc-39, 17-mc-40, & 17-mc-41).

ORDER - 3

**Discussion**

**A.       Rule 50(b) Motion**

IDS has moved for judgment as a matter of law on "those matters" as to which it "moved for directed verdict." Pla.'s Mot. at 15:4-5 (docket no. 214). By framing its Rule 50(b) motion in this manner, IDS acknowledges that it cannot base its post-judgment motion on any argument not raised pursuant to Rule 50(a) before the matter was submitted to the jury. *See* Fed. R. Civ. P. 50(b). IDS's Rule 50(a) motion was limited to the following issues: (i) alleged insufficiency of the evidence concerning Fellows's emotional distress; and (ii) alleged failure by Fellows to establish a negligence, constructive fraud, CPA, and/or IFCA claim.[1] *See* Tr. (Mar. 31, 2017), Ex. 2 to Thenell Decl. (docket no. 215-2); Minutes (docket no. 195). The Court granted IDS's Rule 50(a) motion with regard to negligence and constructive fraud, and therefore, the only motions that IDS can now present under Rule 50(b) relate to emotional distress damages and whether the counterclaims under the CPA and/or IFCA lack merit for the reason asserted by IDS in its Rule 50(a) motion, namely that no reasonable jury could find that IDS engaged in an unreasonable denial of coverage. IDS has not renewed the latter of its pre-verdict motions, which bordered on being frivolous,[2] and thus, the only issue before the

---

[1] Although the Court dismissed the portions of Fellows's counterclaims relating to the loss of personal property, IDS did not actually move for such relief under Rule 50(a). The Court, however, considered the issue to have been sufficiently raised in pretrial motions and during discussions with counsel about the jury instructions, and was satisfied that Fellows had had ample notice and opportunity to be heard on the subject prior to the Court's sua sponte ruling.

[2] IDS's argument that Fellows was required to prove an unreasonable denial of coverage to establish a claim under CPA is contrary to the statutory language and related jurisprudence. *See* RCW 19.86.020 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."); *see also Indus. Indem. Co. of Nw., Inc. v. Kallevig*, 114

ORDER - 4

1  Court on IDS's Rule 50(b) motion concerns emotional distress damages.  To the extent

2  that IDS seeks judgment as a matter of law under Rule 50(b) as to the amount of contract

3  damages (*i.e.*, the cost to repair the home and the ALE) or the amount of actual damages

4  (*i.e.*, interest on a home equity line of credit and lost wages), IDS's motion is precluded

5  because IDS did not timely raise, pursuant to Rule 50(a), any contention that such

6  amounts should be limited in accordance with, or were unsupported by, the evidence.

7      A jury's verdict must be upheld if it is supported by substantial evidence.  *Wallace*

8  *v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2006).  Evidence is substantial if it is

9  adequate to support the jury's conclusions even if drawing a contrary conclusion from the

10  evidence is possible.  *Id.*  In ruling on a motion for judgment as a matter of law, the Court

11  may not make credibility determinations or weigh the evidence.  *EEOC v. Go Daddy*

12  ─────────────────────────────────────────────

13  Wn.2d 907, 920-25, 792 P.2d 520 (1990).  Indeed, the authority cited by IDS in its objection to the
instructions concerning Fellows's CPA counterclaim, namely *Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 16
14  F. Supp. 3d 1224 (E.D. Wash. 2014) (cited in Pla.'s Obj. at 3 (docket no. 183)), provided no support for,
and actually contradicted, IDS's position.  *See id.* at 1230-31 ("A violation of WAC 284-30-330
constitutes a violation of RCW 48.30.010(1), which in turn constitutes a *per se* unfair trade practice by
15  virtue of the legislative declaration in RCW 19.86.170." (quoting *Indus. Indem.*, 114 Wn.2d at 923)).  The
observation in *Hell Yeah Cycles* that a reasonable denial of coverage is not an unfair practice, *id.* at 1231,
16  does not in any way indicate that an insured must demonstrate an unreasonable denial of coverage, as
opposed to a violation of the insurance regulations, to prevail on a CPA claim.  The Court is satisfied that
Instructions Nos. 15, 15A, and 15B, which track the Washington Pattern Instructions regarding CPA
17  claims, correctly stated the law.  IDS's separate contention that Fellows somehow failed, for purposes of
his IFCA counterclaim, to make the requisite showing of an unreasonable denial of coverage simply
18  ignored the evidence.  From the outset, IDS was on notice, via the police report generated shortly after
Fellows discovered the damage to his residence, that Osborne's children had participated in the
vandalism, and that they were of an age rendering doubtful their ability to formulate the requisite "intent
19  to cause a loss" to trigger the "intentional loss" exclusion of the policy.  *See* Ex. R to Smart Decl. (docket
no. 51-2) (Tr. Ex. 111).  The jury also heard testimony from Fellows's former attorney that, even before
20  Fellows's examination under oath had been taken by IDS, its counsel intimated that IDS would not
provide coverage, derogatorily referring to Fellows as a "scumball" or "scumbucket" because of his
21  criminal history.  IDS's mishandling of this matter was always in focus during the trial, from its self-
induced confusion about whether Fellows was an "insured" to its filing of this declaratory judgment
22  action without ever making a coverage decision.  *See* Order at 8 (docket no. 98) (directing IDS, after
almost 11 months of litigation and resolution of cross-motions for summary judgment, to provide Fellows
with a coverage decision).  IDS's assertion that no reasonable jury could find an unreasonable denial of
23  coverage was simply specious.

ORDER - 5

*Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Rather, the Court must draw all inferences from the evidence in the light most favorable to the nonmoving party, and it must disregard all evidence favorable to the moving party that the jury was not required to believe. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). The Court must accept the jury's credibility findings consistent with the verdict, and it may not substitute its view of the evidence for that of the jury. *Id.* Judgment as a matter of law may be granted only when the evidence, as appropriately viewed, permits only one reasonable conclusion and such conclusion runs contrary to the jury's verdict. *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Having applied these standards, the Court concludes that the jury's award of emotional distress damages is supported by substantial evidence, and IDS's Rule 50(b) motion is DENIED.

**B.      Motion for New Trial**

IDS moves, in the alternative, for a new trial pursuant to Rule 59, arguing that the Court's instructions to the jury were erroneous in multiple ways and that the Court erred in excluding evidence regarding Fellows's prior felony conviction. IDS's contentions lack merit. On a motion for a new trial, the Court's inquiry is whether, giving full respect to the jury's findings and considering all of the evidence, the Court is left with "the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987); *see* 11 Charles Alan Wright, et al., FED. PRAC. & PROC. § 2806 & n.26 (3d ed. 2012) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (applying a similar test for when a reviewing

1    court may upset a trial court's finding of fact in a nonjury case)).  IDS does not come

2    close to meeting this standard.

3           **1.      Jury Instructions**

4           IDS complains about instructions the Court gave, namely Instructions Nos. 7

5    (concerning Osborne's credibility) and 11 (setting forth the elements of IDS's claim for

6    declaratory judgment), and about instructions the Court refused to give, specifically

7    IDS's Proposed Instructions Nos. 62 and 63 and an unnumbered proposed instruction

8    concerning the Court's dismissal of the portions of Fellows's counterclaims that were

9    premised on the loss of personal property.

10           **a.      Instruction No. 7 (Osborne's Credibility)**

11           After IDS had completed its direct examination of Michaela Osborne, and after

12    Fellows's attorneys had cross-examined her, IDS for the first time disclosed, during the

13    course of redirect, that it had reached an agreement with Osborne, shortly before trial

14    began, to forego its subrogation rights against her.[3]  Until the moment in redirect when

15    IDS broached the subject of subrogation, IDS had not bothered to tell Fellows's lawyers

16    about the agreement with Osborne.  The failure to timely disclose such information was a

17    substantial breach of the discovery rules, as well as strong evidence that IDS knew the

18    ───────────────

19    [3] On March 24, 2017, IDS's attorney forwarded to Morgan Mentzer, who represents Osborne in a pending
state court proceeding between Osborne and Fellows, an e-mail from Patrick M. Shine, General Counsel
for IDS, that read, in relevant part, as follows:

20           Your request to waive IDS' [sic] subrogation rights against Ms. Osborn [sic] for potential
           contract damages awarded to Charles Fellows is approved.  IDS does not believe, based

21           on all available information, that Ms. Osborne committed and [sic] act of Domestic
           Abuse, as defined by Washington law.  IDS recognizes the impact these events has had

22           on you and your children and believes this waiver is appropriate, even should a later fact
           finder disagree with our determination.

23    Ex. 3 to Thenell Decl. (docket no. 230-1).

ORDER - 7

waiver of its subrogation rights undermined Osborne's credibility and that it intentionally tried to hide the agreement from Fellows. At Fellows's request, <u>see</u> Def.'s 2d Supp. Jury Instructions (docket no. 185 at 8), the Court added the following language to the standard instruction regarding the credibility of witnesses:

> In considering the testimony of Michaele Osborne, you may take into account that she received favored treatment from IDS in connection with this case. In evaluating Osborne's testimony, you should consider whether and, if so, the extent to which, her testimony might have been influenced by this factor.

Instruction No. 7 (docket no. 196).

IDS's contention that the above-quoted portion of Instruction No. 7 "told the jury to discount Osborne's testimony," Pla.'s Mot. at 7:13-14 (docket no. 214), ignores the words the Court actually used. The Court's phrasing is entirely permissive ("may") and conditional ("whether"), and in no way mandatory. IDS's further argument that, because the parties elicited testimony from Osborne about her "deal" with IDS, Instruction No. 7 placed undue emphasis on the subrogation waiver disregards both (i) IDS's role in surprising Fellows's attorneys and rendering them unprepared to examine Osborne on the subject, and (ii) the Court's duty to provide the jury with guidance about how to consider the evidence once so elicited. Finally, IDS's repetitious assertion that it suffered prejudice unjustifiably attempts to appeal to sympathy. IDS made a strategic decision to waive its subrogation rights against Osborne, to keep the agreement secret until redirect, and then to inquire about the "deal" in an unsuccessful effort to introduce self-serving hearsay articulating IDS's view that Osborne did not commit any acts of domestic abuse. IDS's tactics backfired, and it will not now be heard to complain about any prejudice.

## b. Instruction No. 11 (Elements of IDS's Claim)

In connection with IDS's claim for declaratory judgment, the Court instructed the jury as follows:

> With respect to the damage to the residence, the insurance policy at issue does not cover "intentional loss," meaning "any loss arising out of any act an insured person commits or conspired to commit with the intent to cause a loss." This exclusion does not apply if the loss at issue was "caused by an act of domestic violence by another insured person." Under the insurance policy at issue, Fellows, Osborne, and Osborne's children are each an "insured person."
>
> Because IDS is asserting that an exclusionary provision of the insurance policy applies, IDS bears the burden of proving the relevant facts by a preponderance of the evidence. To obtain a declaratory judgment that it owes no coverage, IDS must prove the following:
>
> 1. Michaela Osborne and/or one or more of her children caused the damage at issue to the residence located at 10021 SE 192nd Place in Renton;
>
> 2. The damage at issue was caused by an act or acts committed by an insured person with the intent to cause a loss; and
>
> 3. The damage at issue was <u>not</u> caused by an act or acts of domestic violence by such insured person, or in other words, the purpose of the damage was not to intimidate or attempt to control the behavior of Fellows.
>
> Based on your consideration of all of the evidence, you must decide whether any portion of the damage to the home that was caused by Michaela Osborne and/or Osborne's children was committed with the "intent to cause a loss," and if so, whether such portion of the damage was caused by an act or acts of domestic violence. You must also determine what amount of the damage was caused by each person.

Instruction No. 11 (docket no. 196) (emphasis in original). IDS challenges Instruction No. 11 in two ways: (i) IDS asserts that Instruction No. 11 improperly allocated to IDS the burden of proving that the damage at issue was not caused by an act or acts of domestic violence; and (ii) IDS contends that Instruction No. 11 somehow inhibited it from arguing that Osborne conspired with her children to cause the damage at issue.

ORDER - 9

1    IDS's first contention was addressed in the Order issued by the Court on April 6,

2    2017, after the jury's verdict, and before judgment was entered.  *See* Order at 4 n.2

3    (docket no. 204).  As explained in that Order, "because the 'domestic violence' exception

4    is contained within the 'intentional loss' exclusion, as opposed to a separate provision of

5    the policy, and because IDS could not, consistent with Washington law, exclude loss

6    caused by domestic abuse or violence to an innocent co-insured's otherwise covered

7    property, Instruction No. 11 appropriately placed the burden on IDS to disprove domestic

8    violence."  *Id.*  The Court is satisfied that its prior ruling is consistent with Washington

9    law.[4]

10    IDS's second argument overlooks the contents of Instruction No. 11, as well as its

11    history.  Instruction No. 11 explains, using IDS's own words, that the insurance policy at

12    issue does not cover "intentional loss," meaning "any loss arising out of any act an

13    insured person commits or *conspired* to commit with the intent to cause a loss."  *See*

14    Instruction No. 11 (docket no. 196) (emphasis added, quoting Policy Exclusions at ¶ 9

15    (docket no. 1-1 at 18)).  Nothing in Instruction No. 11 foreclosed IDS's ability to argue

16    that Osborne conspired with her children to cause the damage, and IDS never objected to

17

18    [4] To the extent that IDS seeks reconsideration of the Court's ruling, its motion is untimely, having been
filed more than fourteen days after the Order was docketed, and its motion does not meet the requirements
19    for reconsideration because it fails to show either "manifest error" in the prior decision or new facts or
legal authority that could not have been brought to the Court's attention earlier through the exercise of
20    reasonable diligence.  *See* Local Civil Rule 7(h).  Moreover, as observed by Fellows, the question of
whether IDS or Fellows bore the burden of proof with regard to the domestic violence issue was rendered
21    moot by the jury's verdict.  The jury found that Osborne's children did not have the requisite "intent to
cause a loss" and that the entire amount of the cost to repair the home ($157,098.24) was attributable to
the children.  *See* Verdict at Questions Nos. 5, 9, & 10 (docket no. 201).  Thus, even if Fellows had been
22    required to prove the "domestic violence" exception to the "intentional loss" exclusion, and even if, as a
result, the "intentional loss" exclusion was found to have applied with respect to the damage that Osborne
23    caused, IDS would nevertheless owe coverage.

ORDER - 10

Instruction No. 11 on that basis.  *See* Tr. (Apr. 3, 2017), Ex. 1 to Thenell Decl. (docket

no. 215-1); *see also* Fed. R. Civ. P. 51(d)(2) (indicating that, in the absence of a timely

objection, the applicable standard for relief is "plain error" affecting "substantial rights").

Instruction No. 11 underwent substantial revision before the final version was read

to the jury.  A prior draft contained the following sentence:

> You must presume that Osborne's children were incapable of formulating
> an "intent to cause a loss," unless you find that IDS has proved by a
> preponderance of the evidence that the children had sufficient capacity to
> understand their actions and to know that such actions were wrong.

This language was consistent with IDS's Proposed Instruction No. 61 (docket no. 144),

which cited to RCW 9A.04.050.  *See also* *Pub. Emps. Mut. Ins. Co. v. Fitzgerald*, 65 Wn.

App. 307, 315-16, 828 P.2d 63 (1992) (whether a person is capable of forming an

"intent" within the meaning of an "intentional act of an insured" exclusion constitutes a

question of fact).  Nevertheless, IDS took exception to the above-quoted material,[5] and

over the objection of Fellows's counsel, the Court removed it.  *See* Tr. (Apr. 3, 2017) at

17:11-21:14, Ex. 1 to Thenell Decl. (docket no. 215-1 at 3-7).  In its motion for a new

---

[5] On the issue of the children's intent, IDS's counsel accused the Court of throwing a "curve ball."  Tr. at 8:17-25 (Mar. 31, 2017), Ex. 2 to Thenell Decl. (docket no. 215-2).  During the ensuing colloquy, IDS's attorney acknowledged that the issue had been in the case for quite some time.  *Id.* at 9:17-10:9.  Indeed, in denying the cross-motions for summary judgment, the Court indicated that whether Osborne's children "were of an age and capacity to be able to form the requisite mental state to even trigger the 'intentional loss' exclusion or its 'domestic violence' exception cannot be determined from the record."  Order at 4 (docket no. 98).  When the parties renewed their dispositive motions after IDS formally denied coverage, the Court observed that the record remained incomplete with respect to the children's ages and mental capacity.  Minute Order at ¶ 1(a) (docket no. 125).  IDS cannot credibly contend that, at the time trial commenced, it was not on notice that the ability of the children to formulate the necessary intent was potentially dispositive, or that it bore the burden of proof as to both the children's capacity and their actual formation of the requisite "intent to cause a loss."  IDS, however, opted not to call the children as witnesses and asked no questions of Michaela Osborne concerning the children's ages, mental capacity, or manifestations of intent, if any.  The jury's finding that the children caused damage to the residence, but did not do so with the "intent to cause a loss," *see* Verdict at Questions Nos. 4 & 5 (docket no. 201), was consistent with the absence of evidence on the matter that IDS was required to prove.

ORDER - 11

1    trial, IDS included the following heading: "The Court Failed to Instruct the Jury as to the

2    Presumption of the 'Intention' of Osborne's Children." Pla.'s Mot. at 11 (docket

3    no. 214). Although the text under this heading refers to the children's intent, it does not

4    appear to assign error to the omission of the presumption provision from Instruction No.

5    11. To the extent, however, that IDS now contends the Court should have instructed the

6    jury about the presumption of incapacity that flows from the ages of the children

7    involved, IDS's argument is precluded by the invited error doctrine. *See DeLand v. Old*

8    *Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985).

9        Despite its heading, this section of IDS's motion seems to be arguing that, because

10    the jury was asked to attribute to Osborne and her children the amount of the cost to

11    repair the home that was caused by each of them, *see* Verdict at Question No. 10 (docket

12    no. 201), IDS was unable to present its theory that Osborne conspired with her children to

13    commit the acts giving rise to the loss. IDS's reasoning is flawed. Even if Osborne and

14    her children engaged in some conspiracy, of which IDS presented no evidence at trial, the

15    jury could still have allocated between them the cost to repair the home, based on the

16    damage done by each of them. Moreover, IDS's contention fails to recognize that, if the

17    children either did not have the capacity to form, or did not in fact have, an "intent to

18    cause a loss" (as was found by the jury), they also could not have "conspired to commit

19    [an act] with the intent to cause a loss." *See* Policy Exclusions at ¶ 9 (docket no. 1-1 at

20    18). Finally, even if Osborne and her children were part of a conspiracy, IDS would not

21    prevail because the jury found that Osborne's acts constituted domestic violence, and

22    thus, any conspiracy would likewise fall within the "domestic violence" exception to the

23

ORDER - 12

"intentional loss" exclusion.  IDS has not raised any doubt about the appropriateness of

Instruction No. 11.

### c.    IDS's Proposed Instructions Nos. 62 and 63

Without citation to any authority, IDS contends that a new trial should be granted

because the Court refused to tell the jury the meaning of the common terms "intimidate"

and "control," for which IDS proposed definitions from the Merriam-Webster Dictionary.

*See* Pla.'s Supp. Jury Instructions (docket no. 171).  IDS's motion lacks merit.  *See*

*United States v. Young*, 458 F.3d 998, 1010 (9th Cir. 2006) ("Jury instructions need not

define common terms that are readily understandable by the jury."); *Lewiston Milling Co.*

*v. Cardiff*, 266 F. 753, 759 (9th Cir. 1920) ("The law does not require courts to define

ordinary words and phrases.").  IDS makes no assertion that, in the context of this case,

the words "intimidate" and "control" have anything other than their usual meanings, and

IDS's suggestion that the jury did not understand such terms improperly casts "an

aspersion upon the intelligence of [the] jury."  *Lewiston Milling*, 266 F. at 759.

### d.    Personal Property

IDS requested that the Court instruct the jury as follows:

> The Court has ruled, as a matter of law, that Mr. Fellows is not
> entitled to coverage for personal property in this matter.

Pla.'s Obj. at 6 (docket no. 193).  Aside from its overbroad, and therefore inaccurate,

summary of the Court's decision, this proposed instruction was unnecessary.  The

damage to the residence and the loss of business attire and formal wear involved different

provisions of the policy at issue, as well as separate occurrences, and the two issues did

not overlap.  Contrary to IDS's argument, Fellows's inability to prove what happened to

ORDER - 13

1    the business attire and formal wear, and consequent failure to carry his burden to show

2    coverage for the loss of such items, did not in any way tend to show that IDS acted

3    reasonably in denying coverage for the vandalism to the home.  Thus, even if the jury had

4    been advised of the Court's ruling concerning the business attire and formal wear, IDS

5    would not have been allowed to ask the jury to draw the inference it proposes about the

6    reasonableness of its denial of coverage as to the dwelling.

7        **2.    Criminal History**

8        IDS alleges that the Court erred in granting Fellows's motion in limine to exclude

9    evidence concerning his 2001 conviction for distribution of cocaine base and money

10   laundering.  _See_ Order (docket no. 142); _see also_ _United States v. Fellows_, CR00-436.

11   IDS is mistaken.  Such impeachment evidence was subject to the balancing test set forth

12   in Federal Rule of Evidence 403.  _See_ Fed. R. Evid. 609(a)(1)(A).  The Court concluded

13   that the probative value of such evidence was substantially outweighed by the undue

14   prejudice to Fellows and the potential for confusing the issues, misleading the jury, and

15   wasting time.[6]  _See_ Fed. R. Evid. 403.  Fellows had been released from custody almost

16   10 years before trial in this matter commenced, _see_ Fed. R. Evid. 609(b) (limiting the use

17   of criminal history evidence after 10 years), and had successfully completed five years of

18   supervised release without incident.  IDS made no proffer that Fellows continues to be

19   involved in drug-related or money-laundering activities, that he has been anything other

20   _____

21   [6] The Court rejects IDS's contrary assertion that the probative value of Fellows's 2001 felony conviction
22   substantially outweighed any prejudice.  With respect to the issues before the jury, including whether
     Osborne's conduct constituted domestic violence and whether Osborne's children had the requisite "intent
     to cause a loss," Fellows's prior drug and money laundering offenses had absolutely no probative value.

23

than candid about his criminal history, or that his prior conviction in any way undermined

his character for truthfulness. Instead, IDS argued that the conviction tended to show

Fellows was the aggressor or "batterer" in a domestic-violence ("DV") relationship with

Osborne. In other words, IDS offered the conviction merely as propensity evidence,

which is precluded by Federal Rule of Evidence 404(b)(1). Moreover, IDS's syllogistic

reasoning is flawed because it relies on a false premise, namely that all felons or at least

all felons convicted of federal drug offenses are DV batterers.[7]

IDS's further contention that the testimony of Fellows's former attorney, Thomas

Lether, "opened the door" to evidence about Fellows's felony conviction is meritless.

At trial, Lether recounted a conversation with IDS's lawyer, Daniel Thenell, in which

Thenell questioned why Lether was representing Fellows, called Fellows a "scumball" or

"scumbucket," indicated that Fellows has "got a criminal history," and opined that

Fellows was "the one who damaged the house." Lether responded that Fellows's "past is

long past history and not really relevant to anything," and explained that Fellows was an

"innocent co-insured" with regard to what Lether described as "clearly an act of domestic

abuse" on Osborne's part.[8] This dialogue transpired shortly before Thenell began taking

---

[7] IDS's assertion that it suffered prejudice from the exclusion of Fellows's 2001 conviction is baseless. Although the felony conviction was excluded, the jury was fully informed about Fellows's misdemeanor convictions for violating the no-contact or protection order issued in connection with the dissolution proceedings, and IDS elicited from Osborne testimony concerning the contentious nature of the couple's relationship and the abuse that she and her children allegedly endured at Fellows's hands. Thus, the Court's in limine ruling did not inhibit IDS from attempting to characterize Osborne as the "victim" and Fellows as the "batterer" in the DV context. IDS, however, missed what the jury plainly saw, namely that such roles are not so clear-cut and rigid.

[8] In its post-judgment motion, IDS asserts Lether testified that he told Thenell Fellows's criminal history either "should not affect his claim" or "should not be considered in any coverage decision by IDS." Pla.'s Mot. at 10 & 11 (docket no. 214). IDS did not submit a copy of the transcript of Lether's testimony, and its recollection is not quite accurate. Lether did not make the blanket statement that IDS attributes to him,

ORDER - 15

Fellows's examination under oath, which IDS was entitled to do under the policy at issue. The timing and circumstances of IDS's counsel's remarks are shocking, and they reveal, as Lether observed at trial, a "predilection towards finding no coverage," an extreme bias, and an inability to conduct the requisite "open-minded investigation." IDS cannot rely on its attorney's disparaging remarks to pry open the door to evidence about criminal history that itself was not a proper or reasonable basis to deny coverage.

## C. Remittitur

IDS asks, in the alternative, for the Court to reduce the amounts awarded by the jury for the cost to repair the home, the ALE, lost wages, and emotional distress. The Court declines to do so. The Court may not disturb a jury's award of damages unless it is "clearly unsupported by the evidence," or "grossly excessive," "monstrous," or "shocking to the conscience." _Brady v. Gebbie_, 859 F.2d 1543, 1557 (9th Cir. 1988). Moreover, the Court may not unilaterally reduce the amount of damages without running afoul of the Seventh Amendment right to a jury trial. _See Kennon v. Gilmer_, 131 U.S. 22, 29 (1889) ("no court of law . . . is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury"). If the Court determines that the verdict should be decreased, the Court must offer the non-moving party the option of either accepting a remittitur or submitting to a new trial. _Fenner v. Dependable Trucking Co._,

but rather focused on the analysis of whether "[d]estroying someone's property when you are upset with your spouse or another member of your household constitutes domestic abuse." Indeed, when IDS later sought, outside the presence of the jury, a ruling that Lether's testimony had opened the door to exploring the extent of Fellows's criminal history, Lether clarified that, when he and Thenell were discussing the subject, they did so "solely in the context of the restraining order violations." As acknowledged by IDS, because Thenell could not be its lawyer as well as a witness in the case, IDS was "stuck" with Lether's testimony concerning his and Thenell's previous exchange.

1  716 F.2d 598, 603 (9th Cir. 1983).  On the other hand, if the jury's award finds

2  substantial support in the record and falls within "the range sustainable by the proof," the

3  Court must resist any temptation to "play Monday morning quarterback" or supplant the

4  jury's evaluation with its own.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,

5  791 F.2d 1356, 1366 (9th Cir. 1986).  The Court is satisfied that the actual and

6  noneconomic damages awarded by the jury are consistent with the evidence and are not

7  in any way excessive.[9]

8  **D.       Motion to Amend Judgment**

9       Although brought as a motion for remittitur, IDS's contention that Fellows is not

10  entitled to actual damages on his breach of contract counterclaim, as well as treble

11  damages on his IFCA counterclaim, is more properly considered a motion to alter or

12  amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), or a motion to

13  correct the judgment, pursuant to Federal Rule of Civil Procedure 60(a).  The motion is

14  denied.  Fellows brought four separate counterclaims, and he is entitled to the full amount

15  of damages awarded by the jury on each counterclaim.  As to his counterclaim for breach

16  of contract, Fellows is entitled to expectancy damages, meaning the sum that would put

17  him in "as good a position as he would have been in" if IDS had performed all of its

---

[9] In support of its contention that the damages awarded by the jury were not supported by the evidence, IDS has not provided a single page of the trial transcript.  Instead, IDS quotes from the policy at issue and asserts that the jury's award is inconsistent with the way in which ALE and losses should be calculated. The policy was an exhibit at trial, and IDS had every opportunity to explain to the jury how the policy defines ALE and envisions that losses will be "settled."  The jury heard testimony that Fellows obtained estimates from three different contractors concerning the anticipated cost to repair his home, that Fellows could not afford to fix everything, but that he did a portion of the work on his own or with his brother's help, and that he paid $700 per month to live elsewhere while he tried to get the residence back into habitable condition, which took substantially longer than it would have if IDS has extended coverage and a contractor had been employed to perform the job.  The Court is satisfied that the jury understood the policy language and awarded damages fully supported by the evidence.

promises under the insurance contract and paid for the cost to repair the home and for ALE. *See* Instruction No. 18 (docket no. 196). The jury awarded $157,098.24 for the cost of repair and $7,700 in ALE, for a total of $164,798.24. Verdict at Question No. 9 (docket no. 201).

With respect to Fellows's IFCA counterclaim, the jury was told that it could, but was not required to, award increased damages in an amount up to three times the actual damages, and that, in deciding whether to award increased damages, it must consider whether such increased award was necessary to punish IDS for its conduct or deter IDS from engaging in similar conduct in the future. *See* Instruction No. 18 (docket no. 196). IDS did not except to Instruction No. 18, and it correctly states the law. The jury found that increased damages on the IFCA counterclaim were warranted, and awarded the maximum amount of $494,394.72, or treble the amount of actual damages. Verdict at Question No. 11 (docket no. 201). Consistent with the jury's verdict, the judgment reflects both the actual damages awarded on the breach of contract counterclaim and the increased damages awarded on the IFCA counterclaim. *See* Judgment (docket no. 205). To do as IDS requests, and collapse the damages on the contract and IFCA counterclaims into one amount, limited to three times the actual damages, would run contrary to the text of the applicable statute, RCW 48.30.015(2), and would not effectuate the jury's verdict.

**E.     Stay of Execution on Judgment**

IDS has moved to stay execution on the judgment pending disposition of its post-judgment motion. The post-judgment motion having been resolved, the motion to stay execution on the judgment is moot.

ORDER - 18

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

(1)    IDS's motion for judgment as a matter of law or, in the alternative, a new trial or remittitur, docket no. 214, is DENIED;

(2)    IDS's motion to stay execution on the judgment pending resolution of post-judgment motions, docket no. 231, is STRICKEN as moot;

(3)    The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 15th day of June, 2017.

Thomas S. Zilly
United States District Judge

ORDER - 19