UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IDS PROPERTY AND CASUALTY
INSURANCE COMPANY,

               Plaintiff,

    v.

CHARLES H. FELLOWS,

              Defendant.

C15-2031 TSZ

ORDER

THIS MATTER comes before the Court on defendant/counterclaimant Charles H. Fellows's motion for attorney fees and costs, docket no. 206. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

IDS Property and Casualty Insurance Company ("IDS") initiated this declaratory judgment action to obtain a ruling that, under a homeowners' policy issued to Fellows and his former wife, Michaela Osborne, it did not owe coverage for the following losses: (i) damage to the residence caused by Osborne and her two children, (ii) additional living expenses ("ALE") necessarily incurred by Fellows to reside elsewhere while the dwelling

ORDER - 1

was uninhabitable, and (iii) theft or other improper disposition of Fellows's personal property, including business attire and formal wear. Fellows brought six counterclaims against IDS. Two of them, for constructive fraud and negligence, were dismissed with prejudice on IDS's oral motion pursuant to Federal Rule of Civil Procedure 50(a). <u>See</u> Minute Order at ¶¶ 1(a) & (b) (docket no. 198). In addition, all counterclaims premised on the lost business attire and formal wear were dismissed. <u>See id.</u> at ¶ 1(c). After a six-day trial, the jury rendered a verdict in favor of Fellows on his four remaining counterclaims, for breach of contract, violation of the Insurance Fair Conduct Act ("IFCA"), violation of Washington's Consumer Protection Act ("CPA"), and insurance bad faith. <u>See</u> Verdict (docket no. 201). Based on the jury's factual findings, the Court ruled against IDS on its claim for declaratory relief, holding that coverage is owed for the damage to residence caused by Osborne and/or her children, as well as for Fellows's related ALE. <u>See</u> Order (docket no. 204). Judgment was entered in favor of Fellows and against IDS with respect to coverage and in the following amounts: (i) $164,798.24 in contract damages; (ii) $494,394.72 in increased damages under the IFCA; (iii) $102,600 in actual damages on the CPA and bad faith counterclaims; (iv) $10,000 in increased damages under the CPA; and (v) $145,000 in noneconomic damages on the bad faith counterclaim, for a total of $916,792.96, together with costs to be taxed as set forth in Local Civil Rule 54(d) and post-judgment interest. Judgment (docket no. 205).

      The pending motion for attorney fees and costs was filed before IDS sought judgment as a matter of law or, in the alternative, a new trial or remittitur. The Court has since denied IDS's post-judgment motions, <u>see</u> Order (docket no. 241), and IDS has

appealed, <u>see</u> Notice (docket no. 243). The Court, however, continues to have jurisdiction to resolve the issues of attorney fees and costs. <u>See</u> <u>Masalosalo v. Stonewall Ins. Co.</u>, 718 F.2d 955 (9th Cir. 1983). Fellows seeks: (i) $32,876 for legal services provided by Lether & Associates PLLC, as well as deposition and trial testimony given by Thomas Lether; (ii) $626,523.50 for work performed by Keller Rohrback L.L.P., taking into account agreed reductions and fees incurred after the pending motion was filed; and (iii) $88,399.91 in costs. Fellows also requests a multiplier of 2.0 with respect to the fees associated with Keller Rohrback's efforts.

**Discussion**

Both the IFCA and the CPA authorize the Court to award attorney fees and costs to Fellows. Because the jury found an unreasonable denial of a claim for coverage or payment of benefits, <u>see</u> Verdict (docket no. 201); Instruction No. 14 (docket no. 196), the IFCA allows Fellows to recover "reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees." RCW 48.30.015(3). The CPA entitles Fellows to "the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The Court may also grant Fellows reasonable attorney fees pursuant to <u>Olympic S.S. Co. v. Centennial Ins. Co.</u>, 117 Wn.2d 37, 811 P.2d 673 (1991), which holds that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." <u>Id.</u> at 54. For purposes of <u>Olympic Steamship</u>, reasonable attorney fees include "expenses necessary to establish coverage," including expert witness fees. <u>Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.</u>, 144 Wn.2d 130, 143-45, 26 P.3d 910 (2001). In response to the pending

motion, IDS has disputed the reasonableness of both the attorney fees and costs requested by Fellows.

## A.     Attorney Fees

When a fee-shifting statute is silent concerning how reasonable attorney fees should be calculated, Washington courts generally employ the lodestar method. *See Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 666, 989 P.2d 1111 (1999). The lodestar method involves two steps: first, computing a lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter; and second, adjusting the lodestar figure either up or down to reflect factors that have not already been taken into account, namely the contingent nature of success and the quality of the work performed. *See id.*; *see also Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-99, 675 P.2d 193 (1983) (quoting *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982), and citing *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980)). The Court is not bound by the lodestar value, but rather, is charged with making "an independent decision" as to what represents a reasonable amount of attorney fees. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987). With regard to reasonableness, an attorney's billing records, although relevant, are "in no way dispositive." *Id.* The fee applicant bears the burden of proving the reasonableness of the amount requested, *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993), and of justifying any upward deviation from the lodestar result, *see Bowers*, 100 Wn.2d at 598.

### 1. **Lether & Associates**

In this action, Lether & Associates never appeared as counsel of record on Fellows's behalf, but the firm represented Fellows until December 31, 2015, the day after this action was commenced, in extrajudicial efforts to obtain coverage for him under the homeowners' policy at issue. With respect to those services, Fellows owes fees pursuant to a written agreement with Lether & Associates, which sets forth a rate of $325 per hour for Thomas Lether's services and a rate of $275 per hour for the work of associates. *See* Ex. A to Lether Decl. (docket no. 209-1). The fee agreement contemplated that Fellows would be responsible for compensating Lether & Associates not only for its legal representation, but also for any time reasonably spent transferring the matter to another attorney. *See id.*

With respect to the period from September 10, 2015, to December 31, 2015, IDS challenges several billing entries. *See* Hill Decl. at ¶ 4 (docket no. 226). Having reviewed the explanations provided by Lether & Associates, *see* Colito Decl. at ¶¶ 4-9 (docket no. 234), the Court is satisfied that all but three (3) of IDS's objections lack merit. The Court agrees with IDS that Fellows is not entitled to fees for time spent pursuing contempt proceedings against Osborne or on the unsuccessful personal property claim, and the 0.6 hours ($165) recorded on November 3, 9, and 17, 2015 will be excluded.

As to billing entries after December 31, 2015, IDS has taken the position that no fees are owed because Lether & Associates did not represent Fellows after such date, and that, with regard to time expended by Thomas Lether in his capacity as a fact witness,

which might be treated as a litigation cost, Fellows has waived any recovery. The Court is of a different view. The Court concludes that, with one exception,[1] the services rendered in January, February, and March 2016 were necessary to transfer the representation to Keller Rohrback, and Fellows will be awarded fees for such efforts. With regard to Lether's deposition, trial testimony, and related preparations, the Court rejects the notion that Fellows's request for attorney fees operates as a waiver of the right to have such time compensated as witness fees. The Court treats Fellows's motion as seeking reimbursement of expenses associated with Lether's role as a witness, and addresses the merits of such request in the next section concerning costs.

For the foregoing reasons, the following amounts are awarded to Fellows as reasonable attorney fees for legal services provided by Lether & Associates:

| | |
|---|---:|
| September 2015 | $2,325.50 |
| October 2015 | $1,667.00 |
| November 2015 | $2,440.00 |
| December 2015 | $2,059.50 |
| January 2016 | $3,324.50 |
| February 2016 | $302.50 |
| March 2016 | $2,532.00 |
| **TOTAL** | **$14,651.00** |

---

[1] The 0.2 hours ($65) spent on January 27, 2016, in a telephone call with Bruce Winchell concerning IDS's attorney, Daniel Thenell, has been excluded. *See* Ex. B to Lether Decl. (docket no. 209-2 at 19).

ORDER - 6

### 2. Keller Rohrback

With regard to the attorney fees sought for work performed by Keller Rohrback, IDS challenges the reasonableness of both the requested hourly rates and the amount of time spent on this matter. Some of IDS's arguments have merit and others do not.

#### a. Rates

Keller Rohrback's services were provided in three different calendar years, 2015, 2016, and 2017, but Fellows seeks fees based on the rates charged in 2017. IDS has not objected to the use of current rather than historic rates in calculating the lodestar, and applying current rates is supported by Ninth Circuit jurisprudence. *See* <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1406-07 (9th Cir. 1992). With respect to the rates of the various members of the Keller Rohrback firm who worked on this matter, IDS disputes only those of Birk and Smart. Although, as IDS observes, Birk's rate for 2017 is higher than what Lether, a more experienced attorney, charges, *see* Lether Decl. at ¶ 3 (docket no. 209) ($395/hour), the Court is persuaded that Birk's rate is nevertheless consistent with the prevailing rates in the local legal community for comparable work, and with the range of rates applied in the last few years when the Court has computed attorney fees. *See* <u>Kroneman v. Country Mut. Ins. Co.</u>, No. C14-1223 TSZ, Talmadge Decl. at ¶ 5 (docket no. 94 at 19) (offering declarant's rate of $400/hour for comparison) & Minute Order at ¶ 1(d) (docket no. 110) (W.D. Wash. Jan. 12, 2016) (awarding $350/hour for lead counsel); *see also* <u>Straitshot Commc'ns, Inc. v. Telekenex, Inc.</u>, 2012 WL 5880293 at *3 (W.D. Wash. Nov. 20, 2012) (applying rate of $425/hour for partners).

Smart's rate for 2017, however, seems excessive.  Smart has indicated that over ninety percent (90%) of his work is performed on a contingency basis, which he believes reflects the inability of most of his clients to afford an attorney at any price.  Smart Decl. at ¶ 10 (docket no. 208).  Thus, Smart's billing rates are not routinely tested by the crucible of the marketplace, and the Court is reluctant to view them as what a reasonable homeowner would be willing to pay to pursue a first-party insurance coverage claim.  The Court will apply a rate of $600 per hour for Smart's services in this matter, which is reasonable in light of Smart's experience, the nature of his practice, and the type of litigation at issue.

      **b.**   **Services**

IDS faults Keller Rohrback for (i) engaging in block billing, (ii) charging for intra-office meetings, (iii) including time spent on clerical or administrative tasks, and (iv) seeking payment for excessive, redundant, or unnecessary hours.  IDS appears to propose reducing by half (50%) every block-billed entry in which an objectionable or non-compensable task appears, citing *Lehman v. Nelson*, 2015 WL 11233094 (W.D. Wash. Aug. 4, 2015), *aff'd in part & rev'd in part*, 862 F.3d 1203 (9th Cir. 2017) (vacating award of attorney fees).  The Ninth Circuit, however, has discouraged blanket or across-the-board deductions for block billing, *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), and the Court declines to adopt such approach.

Moreover, Birk, who spent far more time on this case than any other timekeeper at Keller Rohrback, did not engage in block billing.  Instead, Birk consistently identified discrete efforts and the time associated therewith, often recording multiple entries on the

same day.² *See Hensley v. Eckerhart*, 461 U.S. 424, 437 & n.12 (1983) (a lawyer should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

IDS contends that Keller Rohrback should not be paid for intra-office meetings. The Court disagrees. To the extent that Smart and Birk delegated time-consuming work to associates or paralegals with lower billing rates, the relatively small amount of time they spent assigning tasks and reviewing the results operated to IDS's advantage by producing overall lower fees. In addition, in numerous instances, when Smart and Birk conferred with each other, only one of them billed for such time, alleviating any significant concern about duplicative entries. Finally, unlike in *Welch* (which was cited in *Lehman*, the case on which IDS relies), in which the experienced attorney who was seeking fees had "assumed *sole* responsibility for several hundred" similar cases and was therefore not compensated for time spent in intra-office conferences, *see* 480 F.3d at 949 (emphasis added), in this matter, a team of individuals at Keller Rohrback worked together to conduct discovery and motion practice, prepare for trial, and obtain a favorable verdict. A reasonable amount of intra-office communication was required and is recoverable.

Keller Rohrback is not entitled, however, to compensation for non-legal services, purely clerical or administrative tasks, or time spent on unsuccessful claims or arguments

---

² For example, on February 5, 2016, Birk billed for this matter on four (4) different occasions, once for 1.2 hours (reviewing correspondence from Thenell), again for 0.6 hours (finalizing amended answer), then for another 0.2 hours (editing Rule 30(b)(6) deposition notice), and finally for 0.7 hours (emailing opposing counsel about deposition scheduling). *See* Ex. A to Birk Decl. (docket no. 235-1 at 6).

ORDER - 9

or on matters unrelated to the IFCA, CPA, or insurance bad faith claims.[3] The Court has carefully and thoroughly reviewed the spreadsheets submitted by Keller Rohrback, *see* Ex. B to Smart Decl. (docket no. 208); Exs. A & B to Birk Decl. (docket no. 235), as well as IDS's specific objections, *see* Hill Decl. at ¶ 5 (docket no. 226), and concludes that the following fees are reasonable, given the nature of the counterclaims on which Fellows prevailed, the course of the proceedings, the results achieved at trial and post judgment, and the purposes underlying the IFCA, the CPA, and the *Olympic Steamship* doctrine.

| Timekeeper[4] | Hours | Rate | Fees |
|---|---|---|---|
| William Smart | 265.6 | $600/hr | $159,360.00 |
| Ian Birk | 522 | $475/hr | $247,950.00 |
| Isaac Ruiz | 5.0 | $475/hr | $2,375.00 |
| Kathryn Knudsen | 202.8 | $310/hr | $62,868.00 |
| Gabe Verdugo | 25.9 | $310/hr | $8,029.00 |
| Nicole Dyakanoff | 205.8 | $250/hr | $51,450.00 |
| **TOTAL** | | | **$532,032.00** |

---

[3] The Court has excluded fees associated with attempts to identify alternative housing for Fellows, locating deposition exhibits or transcripts, intra-office meetings about scheduling, cleaning the witness room, efforts to disparage opposing counsel (Thenell), and contempt proceedings against Osborne. Fellows has conceded that he may not recover fees connected with unfiled motions or motions on which he did not prevail, but he has not discounted for motions or oppositions that were partially unsuccessful, as to which he is entitled to only a pro rata share of the correlated fees, and the Court has reduced the hours at issue accordingly.

[4] The Court has not awarded fees for time billed by associate Beth Strosky, paralegals Paige Lewis and Shannon McKeon, or information specialists Jennifer Hill, John Evans, and Carly Eyler. Strosky merely participated in the "roundtable" or focus group for which Keller Rohrback has agreed not to seek fees. *See* Ex. B to Smart Decl. (docket no. 208-2 at 45-46). Lewis devoted a total of two hours to the matter, one of which was spent on a verdict form that was not used by the Court. *See id.* (docket no. 280-2 at 53). All of McKeon's time (2 hours) and over half of Eyler's time (1.6 hours) was dedicated to collecting material about Thenell, a task for which the Court declines to require IDS to pay fees. *See id.* (docket no. 280-2 at 5, 31). Finally, no credit was given for Eyler's other billings (1.1 hours) or the time charged by Hill (0.7 hours) or Evans (2.5 hours), which appear to be in the nature of overhead. *See id.* (docket no. 280-2 at 13, 21-22, 51).

### 3. Multiplier

Fellows seeks to double *all* of the attorney fees associated with Keller Rohrback's services, asserting that such departure from the lodestar amount is justified by both the contingent nature of such fees and the quality of the law firm's work. Fellows has not made the requisite showing for any multiplier. Contingency enhancements are generally not available under federal fee-shifting statutes, *City of Burlington v. Dague*, 505 U.S. 557 (1992), and they are reserved for "rare" occasions under Washington law, *see Sanders v. Washington*, 169 Wn.2d 827, 869, 240 P.3d 120 (2010); *see also Van Pham v. City of Seattle*, 159 Wn.2d 527, 542, 151 P.3d 976 (2007). A contingency adjustment considers the experience of the marketplace, which indicates that lawyers might not provide legal representation on a contingent basis unless they receive a premium for taking the risk that they might not be compensated for their time and effort. *See Bowers*, 100 Wn.2d at 598 (quoting Samuel R. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. PA. L. REV. 281, 324-25 (1977)). Because such enhancement applies only when a risk exists concerning the recovery of attorney fees, a multiplier may not be awarded with respect to time expended after payment is assured, for example, on post-judgment motion practice or in seeking attorney fees and costs. *See id.* at 599. Thus, Fellows's request to double the fees related to Keller Rohrback's post-judgment efforts lacks merit.

An increase for the quality of the representation is appropriate only when the services provided were unusually good, "*taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.'"

*Bowers*, 100 Wn.2d at 599 (emphasis in original, quoting *Copeland*, 641 F.2d at 893). The Court is satisfied that neither the contingent-fee agreement between Fellows and Keller Rohrback nor the manner in which this matter was litigated justify a lodestar multiplier. In seeking a multiplier, Fellows focuses primarily on IDS's conduct toward its insured. Fellows, however, was amply compensated by the jury for the improper ways in which IDS handled the first-party insurance claim at issue, and to the extent that, in response to Thenell's practices or those of his client, the lawyers at Keller Rohrback expended more time than would ordinarily be required in a coverage dispute, the lodestar amount reflects the resulting attorney fees.

**B.    Costs**

    **1.    Witnesses**

Fellows seeks witness fees in the amount of $49,203.72, related to (i) the work of his experts Roger Howson, Paul Pederson, and Dennis Smith, (ii) the deposition of IDS's expert Mark Lawless, (iii) consultation with Jeff Fishbach, a cell data expert, (iv) a real property appraisal performed by Lamb Hanson Lamb Appraisal Associates, Inc., and (v) fees paid in connection with the depositions of Robby Dickerson, Michaela Osborne, and Sheila Phillips. *See* Ex. E to Smart Decl. (docket no. 208-5 at 53-55 & 57-81). IDS has specifically disputed only the appraisal fee, on the ground that the appraisal was not offered as evidence at trial, and the fee associated with Dickerson's deposition, because she did not testify at trial. The Court agrees that Fellows is not entitled to the appraisal fee because the value of the home in April 2016, when the appraisal was performed, as opposed to before August 31, 2015, when the damage was discovered, was not an issue in

the case.  Fellows may, however, recover the fee related to Dickerson's deposition; Dickerson, who is Osborne's sister, submitted a declaration in the state court proceedings between Fellows and Osborne, which was used as an exhibit by IDS in dispositive motion practice.  *See* Ex. 13 to Thenell Decl. (docket no. 61).

Fellows has also asked for fees associated with Thomas Lether's deposition and trial testimony.  Contrary to IDS's assertion, Fellows has not waived this request, and the Court concludes that such actual litigation costs are recoverable, *see* RCW 48.30.015(3); *see also* *Panorama Vill.*, 144 Wn.2d at 144 (an insured is entitled to "**all** of the expenses necessary to establish coverage" (emphasis in original)).  The Court awards witness fees for Lether's deposition, trial, and preparation time, as well as for his firm's efforts in securing payment, calculated at the rate that Lether ($325/hr) and his associates ($275/hr) charge for legal services, as opposed to the higher rate ($450/hr) for testimony.  *See* Lether Decl. at ¶ 3 & Exs. A & B (docket no. 209).  No showing has been made that either Fellows or Keller Rohrback actually paid witness fees to Lether at the higher rate of $450 per hour, and Lether's firm will be adequately compensated by fees computed at its standard rates.  The witness fees to be included as litigation costs are reflected in the following table.

| Witness | Costs Awarded |
|---|---|
| Roger Howson (ICDR, Inc.) | $10,878.35 |
| Paul Pederson (Pederson Associates, Inc.) | $5,829.19 |
| Dennis Smith - Attorney at Law | $26,280.00 |
| Mark Lawless (Constr. Sys. Mgmt. Inc.) | $510.00 |

ORDER - 13

| Witness | Costs Awarded |
|---|---|
| Jeff Fishbach (SecondWave, Inc.) | $5,000.00 |
| Robby Dickerson ($67.00); Michaela Osborne ($46.48); Sheila Phillips ($42.70) | $156.18 |
| Thomas Lether (Lether & Associates) | $11,982.50 |
| <table><tr><th>Task</th><th>Attorney</th><th>Hrs</th><th>Rate</th><th>Amount</th></tr><tr><td>Preparation for Deposition</td><td>Lether</td><td>6.4</td><td>325</td><td>$2,080.00</td></tr><tr><td></td><td>Colito</td><td>1.1</td><td>275</td><td>$302.50</td></tr><tr><td>Deposition</td><td>Lether</td><td>5.7</td><td>325</td><td>$1,852.50</td></tr><tr><td></td><td>Colito</td><td>3.0</td><td>275</td><td>$825.00</td></tr><tr><td>Preparation for Trial Testimony</td><td>Lether</td><td>5.8</td><td>325</td><td>$1,885.00</td></tr><tr><td></td><td>Colito</td><td>5.2</td><td>275</td><td>$1,430.00</td></tr><tr><td>Trial Testimony</td><td>Lether</td><td>9.9</td><td>325</td><td>$3,217.50</td></tr><tr><td>Declaration Regarding Fees</td><td>Lether</td><td>1.2</td><td>325</td><td>$390.00</td></tr></table> | **TOTAL:** **$60,636.22** |

### 2. **Court Reporter and Videographer Charges**

Fellows seeks to tax $22,063.76 in costs for court reporter and videographer charges. IDS contends that none of these expenses should be allowed because Fellows has not indicated which, if any, of the transcripts or videos were used at trial or in connection with successful motions or oppositions. IDS's position ignores the distinction between (i) actual costs, which are authorized by the IFCA, and (ii) statutory costs, which are more limited than actual costs. *Compare* RCW 48.30.015(3) *with* RCW 4.84.010 *and* RCW 4.84.090; *see also* 28 U.S.C. § 1920(2) (allowing fees "for printed or electronically recorded transcripts necessarily obtained for use in the case"). Fellows is awarded costs associated with deposing IDS's witnesses or potential witnesses and obtaining transcripts

of the depositions of his own witnesses, which total $20,378.26. <u>See</u> Ex. E to Smart Decl. (docket no. 208-5 at 83, 85-95, 97, 99-103, 105-14). Transcript charges, however, for discovery or telephonic conferences, as well as for opening statement on an expedited basis, are excluded.

### 3. **Document Reproduction**

Keller Rohrback paid vendors for the reproduction of trial exhibits, some of which were mounted onto foam core. <u>See id.</u> (docket no. 208-5 at 117-18). The firm should be reimbursed for these costs. Keller Rohrback also paid vendors to print almost 2,000 electronic documents onto paper (also known as "blowback") and to perform over 9,000 Tag Image File Format ("TIFF") conversions. <u>See id.</u> (docket no. 208-5 at 119-20). These activities did not occur near the date of trial, and the firm has not explained whether they were related to discovery or motion practice and, if the latter, whether the motion or opposition was successful. These costs, in the amount of $874.89, are therefore excluded.

With respect to the requested $8,430.90 in in-house document reproduction charges, the Court agrees with IDS that insufficient information has been provided concerning whether such expenses were related to counterclaims or motions on which Fellows prevailed. Because the bulk of the color copies were generated during the month leading up to trial, <u>see id.</u> (docket no. 208-5 at 44-46), most of those costs (<u>i.e.</u>, from March 3, 2017, forward) will be allowed, but the other copying charges, <u>see id.</u> (docket no. 208-5 at 5-43), will be reduced by forty percent (40%) to reflect the extent to which they were likely related to unsuccessful claims, arguments, motions, or oppositions. The

amounts awarded for document reproduction are therefore as follows: $1,389.46 for trial exhibits produced by vendors, $1,282.50 for in-house color copies, and $4,159.65 for all other in-house document reproduction, for a total of $6,831.61.

### 4. Legal Research

In seeking $3,229.55 in Westlaw charges, *see id.* (docket no. 208-5 at 51), Keller Rohrback offers no evidence that such costs were incurred in the pursuit of successful counterclaims. The Court will again use the forty percent (40%) figure to account for the counterclaims and motions practice on which Fellows did not prevail, and Fellows shall receive $1,937.73 for Westlaw expenses.

### 5. Miscellaneous Charges

Fellows also seeks messenger, delivery, and process service fees, postage, long distance and conference calling charges, parking fees, and travel and meal expenses. IDS has not specifically disputed any of these costs, and the Court will allow all but the parking fees incurred by Keller Rohrback personnel merely at the firm's office, *see id.* (docket no. 208-5 at 127-34), and the expenses of attorneys' meals on non-trial days, *see id.* (docket no. 208-5 at 135-37). The following costs, computed from the receipts and other documentation provided, *see id.* (docket no. 208-5 at 2-3, 47-50, 122-25, 139-42), are allowed:

| Item of Cost | Amount |
| --- | --- |
| Messenger and Delivery Fees | $570.34 |
| Process Service Fees | $367.00 |
| Postage | $32.44 |

| Item of Cost | Amount |
|---|---:|
| Long Distance and Conference Calling | $5.98 |
| Parking and Mileage (settlement conference) | $73.20 |
| Travel (airfare, hotel, meals, taxis, and parking) | $1,117.78 |
| **TOTAL** | $2,166.74 |

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant Charles H. Fellows's motion for attorney fees and costs, docket no. 206, is GRANTED in part and DENIED in part.

2. Attorney fees in the following amounts are awarded to Fellows pursuant to the Insurance Fair Conduct Act, Washington's Consumer Protection Act, and <u>Olympic S.S. Co. v. Centennial Ins. Co.</u>, 117 Wn.2d 37, 811 P.2d 673 (1991), and its progeny:

        Lether & Associates        **$14,651.00**
        Keller Rohrback        **$532,032.00**

Because the fees for the legal services of Lether & Associates were incurred before Keller Rohrback began representing Fellows, they should **not** be included in calculating the contingent fee owed to Keller Rohrback. <u>See</u> Agreement at ¶ 4 (docket no. 222-1).

3. Costs in the total amount of **$91,950.56** are awarded to Fellows. All costs, including witness fees owed to Lether & Associates, may be considered in computing the contingent fee owed to Keller Rohrback. <u>See id.</u>

ORDER - 17

4. The Clerk is DIRECTED to enter a supplemental judgment consistent with this order and to send a copy of such supplemental judgment and this order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of September, 2017.

Thomas S. Zilly
United States District Judge